No. 21,543.

THE ROAD SUPPLY AND METAL COMPANY, *Appellee*, v. THE KANSAS CASUALTY AND SURETY COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

BRIDGE CONTRACT—*Surety Bond—"Materials" for Which Surety is Liable.* The surety on a bridge contractor's bond, conditioned for payment of all indebtedness incurred for material furnished, is liable for the unpaid price of sheet steel, corrugated and fashioned into piling, the life and substance of which are substantially consumed in constructing the bridge, but is not liable for piling drawn, removed, cut off, and used in the construction of another bridge.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed May 11, 1918. Reversed.

*Fred Stanley, Claude C. Stanley, Benjamin F. Hegler,* and *George Siefkin,* all of Wichita, for the appellant.

*Lee Monroe, James A. McClure, C. M. Monroe,* all of Topeka, and *E. L. O'Neil,* of Bartlesville, Okla., for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover from the surety on a bond given by a contractor who erected a county bridge. The plaintiff recovered, and the defendant appeals.

The condition of the bond was that the contractor should pay all indebtedness incurred for labor or material furnished in the prosecution of the work, and pay all claims which might be the basis of liens. The plaintiff sued for the price of metal used for piling. The answer was that the material was used for concrete forms which did not become a part of the bridge, but which were capable of being used again, and which were drawn, removed, and used again in the construction of another bridge.

The material consisted of new, galvanized, medium steel, in flat sheets, which were corrugated and fashioned into piling six feet long, according to the special order of the contractor. Such piling is driven into the stream to be bridged and forms a box or cofferdam to keep back earth and water. After excavating inside the box, concrete is poured into it to form the pier or abutment under construction. Sometimes, when the piling is not visible after the work is completed, it is allowed to remain; otherwise it is removed. The question was whether or not the material was "used," in the sense of substantially consumed, in the construction of the bridge. (*Lumber Co. v. Douglas,* 89 Kan. 308, 131 Pac. 563.) The question stated was a question of fact. There was evidence that driving the piling batters the ends and causes it to buckle. The material is of short life, is subject to rust, and may be bent in handling. Sometimes the piling may be drawn, the battered ends sawed off, and the piling used again; but it cannot be used over and over. Certain of the piling in question was introduced in evidence, and the proof was clear that it was not fit for further use, and had no value except as junk. So far the plaintiff had a perfectly good case.

The plaintiff produced a civil engineer, experienced in the use of sheet metal for casings in concrete construction work, who testified that the range of depreciation attending use of piling of the kind in controversy is from thirty to seventy percent. The piling exhibited might never be in demand, but

might be of value to-morrow. The plaintiff's president and manager, testifying for his company, said that piling can seldom be used for more than one place without cutting off the ends. Cutting off the ends generally makes it too short for further use in the work for which it was ordered. This piling appeared to have been driven once, pulled, and then cut off and driven a second time. That was the probability. He would not say the piling had been moved to different work. (He did not say the piling had not been used on different work.) The deposition of the county engineer, who saw the material when it arrived at the bridge site, and who was at the bridge when the material was used, was taken, and was offered by the plaintiff. He said the present condition of the material was worn out, and that it was valuable only as junk, at the current price. This witness testified further, however, that the ends of the piling had been sawed off once or twice, that piling may be successfully used again for similar work, and that this piling had in fact been used in the erection of another bridge a few miles from the one described in the contract. The defendant's evidence merely corroborated the portion of the plaintiff's evidence which was to the effect that driving piling once does not destroy it, and that it may be used again in similar work.

The bond covered not only claims which might be the basis of liens, but indebtedness incurred for material furnished, the life and substance of which were practically consumed in the work. While the plaintiff's evidence was conflicting with respect to the extent to which material of this kind may be used the second time, there was no dispute that the material in question had been used a second time in the construction of another bridge. The plaintiff may recover for whatever material was actually used, but may not recover for material which, although damaged and reduced in value, actually formed a part of the contractor's equipment when he engaged in building another bridge.

The judgment of the district court is reversed, and the cause is remanded for a new trial.