[L. A. No. 4167.   Department Two.—May 15, 1918.]

W. H. A. SHERMAN, Plaintiff, Appellant, and Respondent, v. AMERICAN SURETY COMPANY OF NEW YORK (a Corporation), Defendant, Appellant, and Respondent.

PUBLIC WORKS—CONTRACTOR'S BOND FOR MATERIALS AND SUPPLIES—TOOLS AND PLANT.—The surety on the bond of one who contracted with a city for the construction of two wells, and who, in pursuance of the act of March 27, 1897, "to secure the payment of the claims of materialmen, mechanics, or laborers employed by contractors upon state, municipal, or other public works" (Stats. 1897, p. 201), gave a surety bond, conditioned for the payment of materials or supplies used in, upon, or about the "performance of the work contracted to be done," is not liable for tools or plant purchased by the contractor, the use of which is required in doing the work, but which, barring wear and tear incident to such use, survive for repeated and other use, since indebtedness incurred by a contractor in the purchase of his plant or any part thereof, the use of which is required during the work, is neither within the provisions of the act nor included in the terms of the bond.

ID.—RENTAL OF TOOLS—LIABILITY OF SURETY.—Money due by the contractor for the rental of tools used in drilling wells under such a public contract, and the cost of transporting the tools to the place where they are used, is covered by a surety bond for materials and supplies used in the performance of the work, and the surety is liable therefor.

ID.—PREMATURE RELEASE OF CITY BY MATERIALMAN—SURETY'S LIABILITY UNAFFECTED.—Where a materialman on a city contract, before the filing of any claim which would have had the effect of impounding the moneys due from the city to the contractor, gave the city written notice authorizing payment to the contractor for the work,

and purporting to release the city from all claims and demands, such notice and purported release did not discharge the surety on the contractor's bond nor affect the liability of the surety to the materialman, since under the statute, until and unless the materialman filed his claim within ninety days as provided by the statute, he had no claim upon the moneys payable under the contract which could be the subject of the so-called releases.

APPEALS from a judgment of the Superior Court of Los Angeles County.    John W. Shenk, Judge.

The facts are stated in the opinion of the court.

Stutsman & Stutsman, for Plaintiff, Appellant, and Respondent.

Bicksler & Smith, for Defendant, Appellant, and Respondent.

VICTOR E. SHAW, J., *pro tem.*—Plaintiff, as assignee of certain materialmen and laborers, brought this action against the defendant as surety upon a bond given by S. F. Loftus, a contractor, to the city of Long Beach, to recover payment of certain amounts alleged to be due to such materialmen and laborers from the contractor for work performed and material furnished in the construction of two wells for said city.

At the time of entering into the contract, on July 22, 1912, Loftus, pursuant to the provisions of an act of the legislature, designated as chapter 140, Statutes of 1897, gave a bond in the penal sum of four thousand dollars, duly executed by defendant, as surety, the condition of which was that in case Loftus failed "to pay for any materials furnished for the work of improvement described in said contract, or for any work or labor done thereon," the surety would, to the amount of four thousand dollars, pay the same.    Upon completion of the work Loftus, as alleged, was indebted in the sum of several thousand dollars for materials furnished and labor done in the performance of the work and for which the claimants, as required by the act, duly filed with the board of public works their verified claims with a notice requiring said board to withhold payment of any sums due to Loftus and apply the same in liquidation of said claim.

Upon trial the court made its findings upon which judgment was entered in favor of plaintiff for claims, the total amount

of which was $897, and gave judgment in favor of the defendant upon two claims, that of Los Angeles Manufacturing Company for materials furnished, and Long Brothers for labor furnished, the aggregate of which was $5,873. From the judgment so entered both parties appeal upon the same record.

Of the $897 for which judgment was rendered in favor of plaintiff, the court, in effect, found that $99 thereof was for materials furnished by Mills Iron Works; that $214 was for materials furnished by Fairbanks, Morse & Co., and that the remainder thereof, viz., $584, was for rental of tools and freight paid by the claimants for the transportation of the same.

Defendant, as appellant, contends that the finding that Fairbanks, Morse & Co., furnished materials in the sum of $214 is without support, for the reason that it conclusively appears from the evidence that said amount includes the sum of $160, conceded to be the value of one thousand feet of two-inch tubing purchased from said company by Loftus and used solely as an appliance on the end of which a knife was attached for use in perforating the casing of the well, which operation was necessary in completing the wells so that water would flow into the same. After such use of the tubing, the contractor, as purchaser thereof, retained the same unimpaired save and except the wear and tear incidental to such use. The condition of the bond, as required by the act, is that the surety will pay for materials or supplies furnished "for the performance of the work." This provision cannot be construed to cover and include the tools or plant purchased by the contractor, the use of which is required in doing the work, and which, barring wear and tear incident to such use, survive for such repeated and other use. The vendor of a boiler and engine sold to the contractor for use in providing the necessary power in drilling the well, or the seller of a kit of tools to a carpenter, might with equal propriety insist that the value thereof or price agreed to be paid therefor was secured by the bond. Indebtedness incurred by a contractor in the purchase of his plant or any part thereof, the use of which is required in doing the work, is not within the provisions of the act, nor included in the terms of the bond. Hence, the finding that Fairbanks, Morse & Co. furnished materials of the value of $214, in so far as it relates to the $160 found to be the

value of the pipe so purchased by the contractor for use as stated, is not supported by the evidence.

Defendant likewise insists that the court erred in including in the judgment so rendered for plaintiff the sum of $584, found by the court to be due from the contractor for the rental of tools used in drilling the wells and cost for transporting them to the place where used. This contention is based upon the claim that the words "materials or supplies," as used in the statute, should be construed as referring only to those things which enter into and become component parts of the completed structure. In support of the proposition defendant cites a number of authorities construing mechanic's lien statutes which, if applicable, lend force to its claims. (See *Wood* v. *El Dorado Library Co.,* 153 Cal. 231, [126 Am. St. Rep. 80, 16 L. R. A. (N. S.) 585, 94 Pac. 877]; *Hall* v. *Cowen,* 51 Wash. 295, [98 Pac. 670]; *Troy Public Works Co.* v. *City of Yonkers,* 207 N. Y. 81, [44 L. R. A. (N. S.) 311, 100 N. E. 700].) While such statutes in principle bear some analogy to the act under which the bond in question was given, they are distinguishable therefrom. (*French* v. *Powell,* 135 Cal. 636, [68 Pac. 92]; *Associated Oil Co.* v. *Commary-Peterson Co.,* 32 Cal. App. 582, [163 Pac. 702].) It would be inequitable to subject an owner of property to a lien for that which did not enter into and become a part of such property. Hence, in construing mechanic's lien statutes, they are generally held to cover only what has been incorporated into the substance of and added to the value of the property against which the lien is asserted. Section 6923 of the Compiled Statutes of the United States (1916 edition), [8 Fed. Stats. Ann., 2d ed., p. 374], provides that contractors doing public work for the government shall execute a bond conditioned that they will promptly pay all persons supplying such contractor with labor and mate ials "in the prosecution of the work provided in such contract." In *American Surety Co.* v. *Lawrenceville Cement Co.,* 110 Fed. 717, the court, in construing a bond given pursuant to the provisions of the section, said: "The underlying equity of lien statutes relates to a direct addition to the substance of the subject matter, building, or other thing to which the lien attaches, while the statute in question concerns every approximate relation of the contractor to that which he has contracted to do. Plainly, the act of Congress and the bond in the case at bar are sus-

ceptible of a more liberal construction than the lien statutes referred to and they should receive it.'' The learned judge, in discussing the subject, laid stress upon the words ''in the prosecution of the work,'' contained in section 6923, as differentiating the act requiring the giving of such bonds from statutes providing for mechanics' liens. What is said is equally pertinent to our statute requiring a bond for materials or supplies used ''in the performance of the work.'' Indeed, it may be said that in this respect there is no difference in the phraseology of the two acts. As to the bond required under section 6923 of the United States Compiled Statutes, the supreme court of the United States has repeatedly refused to restrict its application in the manner contended for by defendant. As illustrative of these views a few cases may be cited. Thus, in *Title Guaranty & Trust Co.* v. *Crane Co.*, 219 U. S. 24, [55 L. Ed. 72, 31 Sup. Ct. Rep. 140], recovery was allowed under the bond for cartage and towage of materials. In *United States Fidelity Co.* v. *Bartlett*, 231 U. S. 237, [58 L. Ed. 200, 34 Sup. Ct. Rep. 88], where the work contracted for was completing a breakwater, recovery was allowed for all the labor at a quarry opened fifty miles away, including that of carpenters and blacksmiths who repaired the cars in which the stone was carried to the quarry dock for shipment, and wages of stablemen who fed and drove the horses which moved the cars. In *Illinois Surety Co.* v. *John Davis Co.*, 244 U. S. 376, [61 L. Ed. 1206, 37 Sup. Ct. Rep. 614], recovery was allowed not only for the *rental of cars and other equipment* used by the contractor in doing the work, but the expenses of loading the equipment and *freight charges paid in transporting* the same to the place where it was used. Indeed, upon the theory that the act and the bonds given under it must be construed liberally in order to effect the purpose intended, the supreme court, in a very recent case, that of *Brogan* v. *National Surety Co.*, 246 U. S. 257, [62 L. Ed. 703, 38 Sup. Ct. Rep. 250], sustained the right to recover upon such bond for provisions used by a contractor in feeding his employees where the location of the work rendered the furnishing of such board necessary. The principle to be deduced from these and other like decisions is that in so construing the bond no hardship is imposed upon the surety, since in entering into the contract it is deemed chargeable with notice, not only of the financial ability and integrity of the contractor, but with notice as to

whether he possesses the plant, equipment, and tools required in doing the particular work or will be compelled to rent and hire the same or some part thereof, all of which matters are factors to be considered in determining the risk and upon which the surety fixes the premium exacted for executing the bond.

With regard to the appeal prosecuted by plaintiff from the judgment rendered in favor of defendant upon the claim of Los Angeles Manufacturing Company and that of Long Brothers, the court found that the Los Angeles Manufacturing Company furnished to the contractor in the performance of the work materials of the value of $2,476.55, and that Long Brothers supplied labor thereon of the value of $2,855, *claims for which* were, in accordance with the act, filed in the proper office *on July 23, 1913*. The court further found that prior to the filing of said claims, to wit, on December 10, 1912, and July 6, 1913, Long Brothers caused to be delivered to the board of public works of the city of Long Beach documents as follows:

"Long Beach, 12/10/12.

"To Board of Public Works,

   "Long Beach.

   "Dear Sir: We, the undersigned, authorize and give permission to Stanly F. Loftus to collect amount due for labor on well just completed.         Respt. yours,

   "(Sgd.)   Long Bros."

"Long Beach, 7/6/13.

"To Board of Public Works:

   "We, the undersigned, authorize Mr. Stanley F. Loftus to collect for labor on well just finished.

   "(Sgd.)   Long Bros."

It also appears that the Los Angeles Manufacturing Company, under dates of December 12, 1912, and July 7, 1913, caused to be addressed and delivered to the board of public works of Long Beach two documents in words as follows: "Gentlemen: We hereby release you from any claim we may have against you for materials furnished to Mr. S. F. Loftus used in sinking your wells," following which the court found that on *December 20, 1912*, the city of Long Beach, out of the funds appropriated for the payment of the sum due to Loftus under his contract, paid him the sum of $3,036.80, and on July

8, 1913, it paid to him the further sum of $2,836.88, both of which sums were paid in accordance with the terms and provisions of its said written contract as provided therein after the wells had been completed and accepted by said city, but that said Loftus, after receiving payment of said sums, failed to pay the same, or any part thereof, to Long Brothers or the Los Angeles Manufacturing Company, and that in receiving said moneys Loftus was the agent of said Long Brothers and Los Angeles Manufacturing Company. The latter part of said finding, to wit, *that Loftus was the agent of the manufacturing company and Long Brothers,* must be deemed a conclusion of law rather than a finding of fact, and in reaching this conclusion the court, in our opinion, erred.

As found by the court the money was due Loftus upon his contract, he having completed the wells. At the time of the making of the payments neither Long Brothers nor the Manufacturing Company had in pursuance of law filed any claims, the effect of which would be to impound the money due to Loftus and which it was the duty of the city of Long Beach to pay to him in accordance with its contract. Neither the Manufacturing Company nor Long Brothers had any claims upon these funds which could be the subject of the so-called releases. The service thereof, in the absence of any claim at the time having been filed by such parties the effect of which would be to impound the moneys due to Loftus, was, since unnecessary in enabling him to collect that which was due to him, ineffectual and inoperative for any purpose, hence, the case as presented to our minds is exactly the same as though these so-called releases had never been executed. It may be, as contended by the Surety Company, that if they had been executed after the filing of the claims for material and labor they would constitute a release thereof, advantage of which could be taken by the Surety Company. Such question, however, is not before us. Upon completion of the wells, and in the absence of the filing of any claims, it was the duty of the city to pay Loftus in accordance with the terms of the contract. Long Brothers and the Los Angeles Manufacturing Company were strangers to this contract, and having filed no claims for labor and materials furnished in performing the contract, had no interest in or claim upon the fund to be released or in regard to which an agency could be created. The fact that the city prior to the filing of the claims of Long

Brothers and Los Angeles Manufacturing Company paid Loftus nearly six thousand dollars on account of the work done which was in accordance with the terms of the contract could not impair their right under the statute and the bond given in pursuance therewith to file their claims within the ninety days and look to the surety on the bond for payment, limited, of course, by the amount specified in the bond for which the surety was liable. What is said sufficiently disposes of all points made which merit discussion.

It is ordered that the judgment rendered in favor of the plaintiff for $897.05 be modified by deducting therefrom the sum of $160, and, as thus modified, it is affirmed; and that the judgment in favor of the defendant-appellant as to the claims of Los Angeles Manufacturing Company and Long Brothers be reversed and that judgment in favor of plaintiff for the amount of said claims as filed be entered upon the findings, recovery thereof to be restricted to the penal amount of the bond and interest thereon.

It is further ordered that plaintiff recover its costs on this appeal.

Melvin, J., and Wilbur, J., concurred.