[Civil Nos. 1642, 1645, 1648, 1649, 1650.   Filed January 9, 1920.]

[186 Pac. 502.]

UNITED STATES FIDELITY & GUARANTY COMPANY, a Corporation, Appellant, v. CALI-FORNIA-ARIZONA CONSTRUCTION COM-PANY, a Corporation, et al., Defendants, and CITIZENS' NATIONAL BANK, a Corporation, Intervener, Appellee.

BENNETT LUMBER COMPANY, Appellant, v. UNITED STATES FIDELITY & GUARANTY COMPANY, Appellee.

UNITED STATES FIDELITY & GUARANTY COMPANY, Appellant, v. PHOENIX-TEMPE STONE COMPANY, Appellee.

UNITED STATES FIDELITY & GUAR-ANTY COMPANY, Appellant, v. WARREN BROTHERS COMPANY, Appellee.

UNITED STATES FIDELITY & GUARANTY COMPANY, Appellant, v. THE BARRETT COMPANY, Appellee.

1. PRINCIPAL AND SURETY—SUBROGATION—SURETY MAY SUE TO EN-FORCE RIGHT OF SUBROGATION AND TO PREVENT MULTIPLICITY OF SUITS.—Where street contractor, having performed work under con-tracts pursuant to Improvement Act of 1912 (Civ. Code 1913, tit. 7, c. 13), was adjudged a bankrupt, the contractor's surety, liable to creditors who had filed claims as provided by paragraph 1962, could begin action to subject proceeds of the contracts to payment of claims or to be subrogated to the rights of creditors, and, to prevent a multiplicity of suits, could join creditors as de-fendants to determine its liability, and the court, in order to afford complete relief, could render judgment in favor of each of the several claimants against surety.

2. INSURANCE—RULE AS TO LIBERAL CONSTRUCTION IN FAVOR OF IN-SURED INAPPLICABLE WHERE LANGUAGE HAS WELL-DEFINED MEAN-ING.—An insurance contract, like any other contract, must receive

---

1. Right of one furnishing labor or material to sue on bond given by contractor to property owner, note, **Ann. Cas.** 1916A, 574.

a reasonable construction, and while insurance contracts are construed most favorably to the insured where the meaning of the language is doubtful, such rule is inapplicable when the language has acquired, by judicial construction, a clear and definite meaning.

3. Municipal Corporations—Meaning of "Material Furnished for the Improvement" in Contractor's Bond Stated.—Contractor's bond conditioned upon payment for all "materials . . . furnished for the . . . improvement" under Civil Code of 1913, paragraph 1962, does not cover all material furnished, but only such as actually enters into the work, or is consumed or substantially consumed in doing it, as distinguished from its use as a mere appliance in aid of performance, and where so consumed     is unnecessary that there be actual physical incorporation in the structure or improvement.

4. Municipal Corporations—Statute Requiring Contractor's Bond to be Liberally Construed.—Statutes requiring the execution of contractor's bonds are to be more liberally construed than mechanic's lien statutes.

5. Municipal Corporations—Lumber to be Reused by Contractor Not Covered by Bond to Pay for "Material Furnished for the Improvement."—Lumber used by street contractor to cover the dirt after it was rolled and ready for the pavement, and which was taken up and again put to similar use in similar work under other contracts, though rendered unsalable as new or merchantable lumber, and though some of it may have been broken or destroyed, was not covered by contractor's bond conditioned on payment for "materials . . . furnished for the . . . improvement" under Civil Code of 1913, paragraph 1962.

6. Patents—Owner of Patent has Right to Charge Reasonable Royalty.—Patentee or owner of patent has the right to charge a reasonable royalty or license fee for the use of a patented material or process.

7. Patents—Use of Patented Material or Process Without Authority Unlawful.—Without procuring from patentee or owner of patent the right to use patented material or process there can be no lawful use thereof.

8. Municipal Corporations—Contractor's Bond for Improvement Covers Royalties on Patented Articles—"Material Furnished for the Improvement."—Royalties due from contractor for privilege

---

3. Authorities discussing the question as to nature of labor or materials which will support an action upon a contractor's bond are collated in notes in 43 L. R. A. (N. S.) 162; L. R. A. 1915F, 951.

8. Right of municipality, when required by law to let contracts at public bidding, to contract for patented or monopolized article, notes, 3 Ann. Cas. 745; 10 Ann. Cas. 709; Ann. Cas. 1915B, 460.

of using a patented process for combining materials used in bitulithic paving, and machinery used in connection with laying such material authorized by Civil Code of 1913, paragraph 1974, *held* covered by contractor's bond conditioned on contractor's payment for "materials . . . furnished for the . . . improvement," under paragraph 1962.

9. MUNICIPAL CORPORATIONS—SURETY LIABLE FOR ROYALTIES DUE FROM CONTRACTOR THOUGH PATENT OWNER FAILED TO FILE CONTRACT.—That owner of patent process did not file agreement to furnish all the material and give license to use of patents at definite price as required by specifications did not preclude owner from recovering from contractor's surety for royalties due where price was reasonable and neither city nor property owners objected.

10. INTEREST RECOVERABLE FROM DATE DEBT BECAME DUE WHERE AMOUNT IS DEFINITE OR ASCERTAINABLE.—Generally where amount of recovery, if recovery be had, is definitely fixed by agreement of the parties or capable of ascertainment by mere computation, interest should be computed from the time the debt became due.

11. INTEREST—RECOVERABLE FROM COMMENCEMENT OF ACTION WHERE CLAIM IS DISPUTED.—Where both amount and validity of claim is disputed, interest is to be computed from the time of the commencement of the action.

12. INTEREST—"COMMENCEMENT OF ACTION" IS DATE WHEN PREVAILING PARTY WAS MADE A PARTY.—Where surety brought action against contractor and later filed amended complaint making contractor's creditors parties to the action, the commencement of the action, within rule giving creditor recovering judgment against surety interest from commencement of action, was the date when such creditor was made a party to the action.

13. MUNICIPAL CORPORATIONS—STONE TAKEN FROM QUARRY UNDER A CONTRACT OF SALE CALLED A LEASE COVERED BY CONTRACTOR'S BOND. Stone taken from stone quarry for use in pavement under contract called a lease requiring contractor to pay specified sum per ton of stone removed, *held* covered by contractor's bond conditioned upon payment for materials furnished for improvement; the contract in reality being a contract of sale, and not a lease.

14. MUNICIPAL CORPORATIONS — SURETY CANNOT DEFEAT CLAIM ON GROUND THAT MATERIAL FURNISHED BELONGED TO OTHER PARTY, WHO HAD FILED NO CLAIM.—Contractor's surety cannot avoid liability for stone used in pavement upon ground that third party, and not claimant, was owner of land from which the stone was quarried, where third party was not a party to the action and had not filed claim as required by Civil Code of 1913, paragraph 1962.

15. MUNICIPAL CORPORATIONS—CONTRACTOR'S SURETY ONLY LIABLE TO CREDITORS WHOSE CLAIMS HAVE BEEN FILED.—Surety of contractor doing work under Improvement Act of 1912 (Civ. Code 1913, tit. 7,

c. 13) is liable to only those creditors whose claims have been properly filed under paragraph 1962.

16. MUNICIPAL CORPORATIONS—"IMPROVEMENT IS COMPLETED" UPON MUNICIPAL AUTHORITIES SO DECLARING AND ACCEPTING WORK.—The term of the completion of an improvement under Improvement Act of 1912 (Civ. Code 1913, tit. 7, c. 13), within paragraph 1962, requiring claim against contractor to be filed within thirty days from time improvement is completed, is not the time of the actual cessation of work, but the time when the municipal authority having jurisdiction to finally pass upon the question declares it to have been completed and accepts the work.

17. MUNICIPAL CORPORATIONS—CLAIM AGAINST CONTRACTOR ON HIS BOND MAY BE FILED BEFORE COMPLETION OF CONTRACT.—Material-man's claim against paving contractor required to be filed "within thirty days from the time said improvement is completed" under Civil Code of 1913, paragraph 1962, to entitle claimant to recover on contractor's bond, may be filed before contract is completed.

18. MUNICIPAL CORPORATIONS—PROTEST BY OWNER APPEALING FROM ACCEPTANCE OF WORK HELD SUFFICIENT.—A written instrument filed with city clerk by owner of property assessed for improvement under Improvement Act of 1912 (Civ. Code 1913, tit. 7, c. 13), stating that, "according to our judgment the work is not what it should be, and we ask that you give the above protest consideration," even though confused with much irrelevant and improper matter, *held* a sufficient statement of grounds of objection within statute providing that parties desiring to appeal from acceptance of work by superintendent of streets should file notice briefly specifying grounds of objection.

19. MUNICIPAL CORPORATIONS—ACTION OF CITY COMMISSION IN FINDING WORK NOT COMPLETED NOT SUBJECT TO COLLATERAL ATTACK.—Action of city commission, after having acquired jurisdiction, in finding that improvement had not been fully completed, cannot be questioned on collateral attack, and its determination is not open to review by the courts.

20. MUNICIPAL CORPORATIONS—CITY COMMISSION HAS JURISDICTION TO PASS ON COMPLETION OF IMPROVEMENT.—Under Civil Code of 1913, paragraph 1965, city commission has jurisdiction to pass upon question of whether an improvement, under Improvement Act of 1912, has been completed, even though no appeal from acceptance of work by superintendent of streets has been taken.

APPEALS from portions of a decree of the Superior Court of the County of Maricopa. Frank H. Lyman, Judge. Affirmed, with modification as to one claim.

Messrs. Armstrong & Lewis and Mr. James E. Degnan, for United States Fidelity & Guaranty Company.

Messrs. Kibbey, Bennett & Curtis, for Appellant, Bennett Lumber Company.

Mr. John L. Gust and Mr. Harold Baxter, for Appellees, Warren Bros. Company and Phoenix-Tempe Stone Company.

Mr. C. F. Ainsworth, for Appellee, Barrett Company.

PATTEE, Superior Judge.—At various dates during the year 1916 the superintendent of the streets of the city of Phoenix, Arizona, entered into four separate contracts with the California-Arizona Construction Company, hereinafter called the Construction Company, for the improvement of certain streets of that city. These contracts were made pursuant to the provisions of the Improvement Act of 1912 (chapter 13, tit. 7, Rev. Stats. Ariz. [Civ. Code] 1913), and were made after the proceedings provided by that act were regularly had by the municipal authorities. As required by paragraph 1962, Revised Statutes of 1913, the Construction Company executed, in connection with each of the contracts and filed with the superintendent of streets, a bond conditioned for the faithful performance of the contract, and also a bond for the payment of materials furnished or work and labor done for the improvement specified in the contract. Each of these bonds was executed by the Construction Company as principal and the United States Fidelity & Guaranty Company, hereinafter called the Surety Company, as surety. The Construction Company entered upon the performance of the several contracts and subsequently completed the making of the several im-

provements.  On February 9, 1917, shortly after the completion of the several improvements, the Construction Company was adjudged a bankrupt by the district court of the United States for the southern district of California.  Soon after this adjudication the Surety Company brought this action in the court below against the Construction Company, the city of Phoenix and its treasurer, and the Elliott & Horne Company, a corporation.  In its complaint the Surety Company set forth the making of the several contracts, the giving of the bonds, the performance of the work provided by the contracts, and asserted that certain serial or improvement bonds which had been provided to be issued in payment for the work were about to be issued and delivered to the Elliott & Horne Company, to whom all moneys and benefits accruing or becoming due or payable under the contracts had been assigned by the Construction Company.  It was also alleged that the Construction Company had failed to pay for certain materials furnished for the making of the improvements, and that certain creditors of the Construction Company had filed with the superintendent of streets their claims for the amounts due for such materials, as provided by paragraph 1962, Revised Statutes of 1913, and that such creditors were claiming, or about to claim, the right to recover such amounts from the Surety Company.  Asserting that its right, as surety, to the improvement bonds was prior and superior to that of the assignee, the Surety Company alleged that, if the bonds were issued and delivered to the assignee, they would be disposed of to innocent purchasers, and, the Construction Company being insolvent, the Surety Company would lose all right of reimbursement for the amounts it might be required to pay to the creditors of the Construction Company.  It prayed, therefore, that the city and its officers be en-

joined from delivering to the assignee the bonds referred to, and that its right to such bonds and to reimbursement from the proceeds thereof for any amount it might be required to pay or become liable for to those furnishing materials, be decreed to be prior and superior to any right of the · Elliott & Horne Company as assignee of the Construction Company, and that a receiver be appointed to take possession of the bonds and dispose of the same, and that the proceeds thereof be distributed according to its asserted right. Later an amended complaint was filed making parties defendant all claimants who had filed their claims with the superintendent of streets, and who asserted the right to recover upon the bonds, and such claimants were thereupon made parties defendant. The Elliott & Horne Company answered the complaint, as · did also a large number of the claimants; the latter setting forth the fact of furnishing materials to the contractor for the making of the improvements specified in the contracts and praying recovery against the Surety Company for the several amounts due them. The Citizens' National Bank of Los Angeles, California, intervened in the action, asserting that it was the holder of the warrants and assessments issued by the superintendent of streets as collateral security for certain indebtedness owing to it by the Elliott & Horne Company, and in effect asserting the priority of the rights of the Elliott & Horne Company as assignee and of itself as holder of such collateral security. Upon the issues presented by these pleadings, the cause was tried, and judgment rendered establishing the claimed right of the Surety Company and decreeing its right and equity in the proceeds of the contracts to be superior to those of the assignee and the intervener. By the decree a receiver was appointed, to whom the city was ordered to deliver the bonds,

and the receiver was directed to dispose of the same, and out of the proceeds thereof to pay the Surety Company a sum sufficient to repay it for all moneys that it might be compelled to expend in order to discharge the judgments rendered against it in favor of the claimants, with interest and costs, and to pay the balance into court for the use and benefit of the Elliott & Horne Company or the intervener, as their interests might appear. The rights of the several claimants who had appeared and answered were determined by the court, and judgments were rendered against the Surety Company in favor of a number of such claimants for the amount found to be due for material furnished the Construction Company.

Among the claimants who appeared and answered were the Bennett Lumber Company, the Phoenix-Tempe Stone Company, the Warren Bros. Company, and the Barrett Company. The judgment of the court disallowed and rejected the claim of the Bennett Lumber Company, and adjudged that each of the other claimants mentioned recover a specified amount from the Surety Company.

From the judgment of the trial court the Elliott & Horne Company and the Citizens' National Bank, intervener, appealed to this court. The Bennett Lumber Company appealed from the judgment against it, and the Surety Company separately appealed from each judgment in favor of the other claimants above mentioned. Each of these appeals was separately docketed, but, as they are all appeals from portions of the same judgment and to some extent involve the same questions, they will, so far as they are now before the court, be disposed of in one opinion.

In view of the disposition of the appeals taken by the Elliott & Horne Company and the Citizens' National Bank, no more extended statement of the facts

or summary of the lengthy pleadings is deemed necessary. Subsequent to the docketing of the appeals of the last-mentioned parties and before the argument of those appeals, a stipulation was filed by the parties to such appeals that the same might be dismissed, and accordingly it was so ordered. This order, however, did not affect the appeals taken from the judgments determining the rights of the four claimants, and those remain for determination. The judgment, so far as it affects the Elliott & Horne Company and the Citizens' National Bank, became final by the dismissal of the appeals, and the court is relieved of the duty of determining any question with regard to them. This judgment is conclusive that the rights acquired by the Elliott & Horne Company from the Construction Company are subordinate and subsequent to the rights of the Surety Company, and no opinion will or can, with propriety, be expressed with respect to any matter involved in the appeals of the assignee and the intervener. The only matters before the court are the rights of the several claimants who are parties to the appeals taken from the judgments determining those rights.

The action is one which finds many precedents in the reported cases. The Surety Company, finding itself liable or to become liable for the debts of its principals, seeks to subject the proceeds of the contracts out of which the contract of suretyship arose to the payment of the debts of the principal, or seeks subrogation to the rights of the creditors of the principal. Inasmuch as it may not be advised as to the extent of its liability or the existence of the right of recovery on the part of those claiming that it is liable as surety, it makes all such claimants parties for the purpose of determining the extent of its liability, and to avoid a multiplicity of suits upon the bonds, upon which it became surety. In such case

the claimants may assert and are required to set forth the nature and extent of their claims against the principal and the surety, and in order to afford complete relief the court may in such action render judgment in favor of each of the several claimants against the surety, as the rights of such claimants may be proven. *Maryland Casualty Co.* v. *Washington Nat. Bank*, 92 Wash. 497, 159 Pac. 689. But, while the Surety Company has brought the claimants into court, and must therefore submit to judgment against it upon the claims, the issue as between the Surety Company and the claimants is the validity and the amount of the claim, and this issue must be determined as though each claimant had brought a separate action upon the bonds and prosecuted it to final judgment. If the claimant who is made a party to this character of action has a claim coming within the terms and conditions of the bond, he is entitled to assert it and to recover judgment against the Surety Company in such action. If his claim is not within the conditions of the bond, he is not entitled to a judgment against the Surety Company, but is a mere general creditor of the principal, and may have no greater relief than a personal judgment against the principal with no greater rights than any judgment creditor of the principal whose claim has no connection with the transaction in which the bond was given. Such was the view evidently taken by the court below; for it rendered judgments in favor of a number of the claimants against the Surety Company for such amount as it might be compelled to pay in satisfying these judgments, and awarded any balance of the proceeds of the bonds issued in payment of the work done under the contract to the assignee and the intervener, as their interest might appear. The questions now before the court are therefore simply whether the several claimants are

entitled to recover of the Surety Company. The rights of the several claimants will therefore be considered.

Claim of the Bennett Lumber Company.

This company filed its claim with the superintendent of streets, asserting that it had furnished lumber to the Construction Company for use in carrying out one of the contracts. The fact found by the court below with respect to this claim was as follows:

"At the request of the superintendent of the Construction Company, the Bennett Lumber Company sold and delivered to the Construction Company upon the ground where the work under said contract was being performed new lumber for the use of said Construction Company in executing said contract No. 28. The use to which said lumber was put by the Construction Company was the laying down of said lumber upon the street being improved under said contract and the mixing of materials thereon used in the construction of the street. In and by such use the lumber in question was not thereafter merchantable lumber, and after the completion of the contract the lumber in question not destroyed or rendered worthless by use was taken away by the Construction Company."

Turning to the evidence respecting the use to which this lumber was put, it was shown by testimony not contradicted that the lumber furnished was 2x12 boards which were laid on the dirt after it was rolled and ready for the pavement; the material was then put on the boards to keep it out of the dirt, and as the work progressed the boards were moved ahead of the work, and the operation was repeated until the work was finished. After the completion of the work the boards were taken up and removed to the yard of the contractor to be used, in the language of one of the witnesses, "on the next job that comes along." To some extent this lumber was broken and rendered unfit for use, but to what extent that condi-

tion may have existed in this particular case is shown neither by the finding nor by the evidence. The lumber that was not destroyed (and from the evidence it appears the greater part of it), while unmerchantable as lumber by reason of the use to which it had been put, was capable of use in similar work under other contracts, and could be used and reused for that purpose until it might be broken up or destroyed. The claim of the Lumber Company was rejected by the court below, and judgment rendered denying it any relief against the Surety Company.

The statute under which the bond was given (paragraph 1962, Revised Statutes of 1913) provides that the bond shall be conditioned that, "if the contractor to whom said contract was awarded, or any assign of his, fails to pay for any materials so furnished for the said improvement, or for any work or labor done thereon of any kind, the sureties will pay the same to an amount not exceeding the sum specified in said bond." The conditions of the bond under which the Lumber Company asserts its claim follow this provision of the statute. The question is, therefore, whether the materials furnished by the Lumber Company as above stated were such as to come within the conditions of the bond. It is urged by the Lumber Company that a contract of a surety company is, under our statutes, an insurance contract, and should therefore, be most strongly construed against the insurer. Granting this, a contract of insurance, like any other contract, must receive reasonable construction, and while insurance contracts are construed most favorably to the insured where the meaning of the language is doubtful, there is no occasion for the application of this rule when the language has acquired by judicial construction a clear, definite meaning. It is well settled that the

expression "material furnished for the improvement" does not include all materials furnished to the contractor who makes the improvement. The requirement of the statute and the condition of the bond is not intended, as contended by the Lumber Company, as security that the contractor will pay for everything he buys and uses in doing the work provided for in the contract. On the contrary, the materialmen protected by the provisions of the statute and by the bond are such only as furnish material used in the work or improvement in the sense that such material actually enters into the work done, or is consumed, or substantially consumed, in doing it, as distinguished from its use as a mere appliance in aid of performance. Material intended for and actually used as an implement or device in performing the work and constituting a part of the contractor's permanent equipment is not the kind of material for which a recovery can be had upon a bond given under the provisions of the statute above quoted. The statute gives the right of recovery upon the bond to any person furnishing materials "to be used in the performance of the work." In discussing the character of material coming within a statute substantially the same as ours and within the condition of a bond given under such statute, the Supreme Court of California says:

"This provision cannot be construed to cover and include the tools or plant purchased by the contractor, the use of which is required in doing the work, and which, barring wear and tear incident to such use, survive for such repeated and other use. . . . Indebtedness incurred by a contractor in the purchase of his plant or any part thereof, the use of which is required in doing the work, is not within the provisions of the act, nor included in the terms of the bond." *Sherman* v. *American Surety Co. of New York,* 178 Cal. 286, 173 Pac. 161.

"Appliances are, generally speaking, things which are expected to be used again and again. They are in effect tools. Appreciably diminishing perhaps in usefulness with the wear and tear of each building contract in which they are used, they still cannot be said to be materials furnished 'for or in or about' the erection of any given structure, although after being used in the building of many structures they finally go to the junk heap." *Barker & Stewart Lumber Co.* v. *Marathon Paper Mills Co.,* 146 Wis. 12, 36 L. R. A. (N. S.) 875, 130 N. W. 866.

"Tools, implements, and appliances used by the contractor in the prosecution of the work are not materials used therein in any reasonable sense of the term. If a pick, shovel, pair of boots, hoisting rope or any other implement, tool or appliance used by the contractor on the work is worn out or broken, it does not follow that such article thus becomes material used therein within the meaning of the contract. The contract presupposes that the contractor will furnish, upon his own account, the necessary tools, implements and appliances with which to perform the work." *Kansas City* v. *Youmans,* 213 Mo. 151, 112 S. W. 225.

See, also, *American Surety Co.* v. *Lawrenceville Cement Co.* (C. C.), 110 Fed. 717; *National Surety Co.* v. *United States,* 228 Fed. 577, L. R. A. 1917A, 336, 143 C. C. A. 99; *United States Rubber Co.* v. *American Bonding Co.,* 86 Wash. 180, L. R. A. 1915F, 951, 149 Pac. 706.

If, therefore, the materials furnished by the Lumber Company were mere appliances for use in performing the work, they became a part of the contractor's equipment, and not materials to be used in the performance of the work within the meaning of the statute or the terms of the bond.

It is well settled that actual physical incorporation in the structure erected or improvement made is not necessary in order to constitute the articles furnished "materials furnished in the performance of the work." It has many times been held that ex-

plosives used in preparing the ground, or the rock for the performance of the contract, and other materials which are totally or substantially destroyed in the carrying out of the work, may be deemed materials within the proper meaning of that term. As was said by the Supreme Court of Wisconsin, in speaking of this class of materials:

"In these cases the liens have been granted upon one general principle or idea, namely, that where the material is used directly upon the work or structure itself, instrumental in producing the final result, and is actually consumed in the use, it may be said that in every true sense it has entered into and forms a part of the completed structure." *Barker & Stewart Lumber Co.* v. *Marathon Paper Mills Co., supra.*

So it has been held in some cases that lumber used in the making of concrete forms comes within the meaning of the word "material," and, relying upon this class of cases, the Lumber Company urges that its claim comes within the rule as stated in *Chicago Lumber Co.* v. *Douglas,* 89 Kan. 308, 44 L. R. A. (N. S.) 843, 131 Pac. 563, and *Alexander Lumber Co.* v. *Farmer,* 272 Ill. 264, 111 N. E. 1012. In each of these cases, however, the lumber used was either totally or substantially destroyed in the performance of the work, or was left in and became in effect a part of the work. This matter of destruction of the material seems to be an important consideration in determining whether the article furnished can be deemed material furnished for the performance of the work. In *Road Supply & Metal Co.* v. *Kansas Casualty & Surety Co.,* 103 Kan. 125, 175 Pac. 108, it was held, citing *Chicago Lumber Co.* v. *Douglas, supra,* that the right of recovery depended upon the question whether or not the material was used in the sense of substantially consumed, and it was said:

"The plaintiff may recover for whatever material was actually used, but may not recover for mate-

rial which, although damaged and reduced in value, actually formed a part of the contractor's equipment when he engaged in building another bridge.''

In *B. F. Avery & Sons* v. *Woodruff*, 144 Ky. 227, 36 L. R. A. (N. S.) 866, 137 S. W. 1088, it is said:

''If the lumber had been furnished to make a scaffold, molds or forms with the intention of using them in the erection of that building and then carry them away and use them in constructing other buildings, then no lien would attach, as they would be regarded as a part of the appliances of the workmen and would occupy the same place as a hammer, saw or other tool used by the workmen.''

And later, in the same opinion, it is said, in discussing a former decision of the same court in which it was held that lumber used in making concrete forms was not lienable:

''But that case is unlike this one, as there was nothing in that one to show that the lumber was destroyed or consumed in the erection of the building; it might have been used in erecting other buildings.''

Doubtless, as contended by counsel for the Lumber Company, there is a distinction between the statutes giving mechanics' or materialmen's liens and statutes requiring the giving of bonds of the character involved in this case, and the latter statutes and the conditions of the bonds given under them are to be more liberally construed than mechanic's lien statutes. *Sherman* v. *American Surety Co., supra.* But, according to the great weight of authority, regardless of any greater liberality of construction of statutes like the one here involved, the term ''materials furnished in the performance of the work'' cannot be held to include equipment or appliances used in the carrying out of the work done.

In this case the lumber in question did not enter into the physical construction of the improvement. It was not consumed in the making of the improve-

ment. Some of it may have been broken or destroyed in the performance of the work. All of. it was rendered unsalable as new or merchantable lumber. But it was used in the performance of this contract and intended to be used in the performance of any other contract that the contractor might engage in. The extent to which it was destroyed or rendered unusable does not appear either in the finding of the court or in the evidence. Such destruction may have been inconsiderable, and such a conclusion is fairly inferable from the evidence. The fact that it would ultimately be destroyed or perhaps used but few times does not affect the question. As was said by the Supreme Court of Wisconsin:

"If the cofferdam in the present case, though constructed specially for the building of the dam in question, was capable of and intended to be removed and used in building like structures elsewhere, even though suffering serious deterioration each time, and susceptible of use but a few times, it might well be held to be an appliance or part of the contractor's equipment." *Barker & Stewart Lumber Co.* v. *Marathon Paper Mills Co., supra.*

In this case, therefore, it must be held that the lumber furnished by this claimant was not "materials furnished in the performance of the work," within the meaning of that expression as used in the contract and bond, but was a part of the contractor's equipment or an appliance used by the contractor for performing the work, and hence the court below properly denied the claim. The judgment as to this claim is affirmed.

### Claim of Warren Bros. Company.

Warren Bros. Company filed with the superintendent of streets a verified statement of its claim against the bond given on each of three of the contracts before referred to. The claims were for the services of an inspector who performed certain

duties with respect to the improvement and for royalty for the privilege of using a patented material for laying what is known as bitulithic paving, or a patented process for combining materials used in such paving, and machinery used in connection with laying such material. Judgment was entered in favor of the Warren Bros. Company and against the Surety Company for a certain sum for inspection and for the claimed royalties and attorney's fees. From this judgment the Surety Company appeals and assigns two errors. The first is that the court below erred in allowing the claims in so far as they were based upon a charge for royalty, for the reason that royalty is neither labor nor material, and a claim based thereon is not within the terms of the bond. It appears that what is known as bitulithic paving is controlled by certain patents owned by the claimant, and that for the privilege of laying such pavement and using the machinery necessary for that purpose a royalty or license charge is made by the owner of the patents upon the basis of a certain sum per square yard of paving actually laid. Pavement of this character cannot be lawfully laid without the permission of the holder of the patents. It appears that the Construction Company had performed other contracts involving the laying of this kind of pavement under a general understanding or arrangement that twenty cents per square yard was to be charged as royalty. No specific agreement was made with respect to the contracts involved in this case, but the evidence fairly justifies the conclusion that both the claimant and the Construction Company expected that a similar charge would be made for these particular contracts as well as any others the Construction Company might engage in. The question is, therefore, whether such royalty or license

charge is material within the terms of the statute and the bond.

Undoubtedly, if a strict construction is to be given to the term "material," a charge of this character cannot be justified. Some of the authorities—not, however, the more recent ones—strictly construe the term, possibly because of the tendency of some courts to apply in this class of cases the rules applicable to cases arising under mechanic's or materialmen's lien statutes. The tendency in recent years, however, has been to give a liberal construction to the terms "material" and "labor." In the federal courts such liberality of construction is the settled rule since the decision in *Brogan* v. *National Surety Co.*, 246 U. S. 257, L. R. A. 1918D, 766, 62 L. Ed. 703, 38 Sup. Ct. Rep. 250. The California courts, considering statutes similar to ours, have given a broad and liberal construction to the term "materials." *Sherman* v. *American Surety Co.*, 178 Cal. 286, 173 Pac. 161; *Bricker* v. *Rollins,* 178 Cal. 347, 173 Pac. 592; *Pacific Wood & Coal Co.* v. *Oswald,* 179 Cal. 712, 178 Pac. 854. While no case has been cited directly covering a charge of the kind involved in this case, nor has our investigation disclosed any, we think that the word "materials," as used in the Improvement Act of 1912 and in a bond given under that act, is broad enough to include this charge.

The right of a patentee or owner of a patent to charge a reasonable royalty or license fee for the use of a patented material or process cannot be questioned. Without procuring from the patentee or owner of the patent the right to use such material or process, there can be no lawful use thereof. The statute (paragraph 1974, Revised Statutes of 1913) expressly authorizes the use of patented material. The right to use the patented material or process is as essential to the carrying out of the contract as the

physical ingredients used in the performance of the work. Within the terms of the statute and the bond liberally construed, a charge of this kind is therefore as much "material" as the tangible, physical articles entering into the composition of the completed work and comes within the character of indebtedness secured by the terms of the bond.

It is asserted by the appellant that the claim of the Warren Bros. Company is based upon a contract which is void as contravening public policy, for the reason that, as it is said:

"The Warren Bros. Company had an understanding with the Construction Company as to the right to use its process upon payment of a royalty or license charge of twenty cents per square yard when the usual charge was twenty-five cents, and no similar understanding was had with any other contractor desiring to bid upon the work."

It is more than doubtful if this assertion is covered by any assignment of error. But, passing that, the contention appears to be without merit. The specifications of the work to be done under the several contracts call for bitulithic paving. In those specifications it is provided that Warren Bros. Company, the owner of the patents used in the construction of that character of pavement, should file an agreement to furnish any contractor desiring to bid for the work all the necessary material at a definite and reasonable price per square yard, which price should include a license to use the patents required in the construction of the pavement. It appears that such agreement was not actually filed. No one, however, appears to have been injured or prejudiced by the failure to file such agreement. Neither the city nor the property owners, who must ultimately pay the cost of the improvement, are making any complaint. The amount which the Surety Company is required to pay is less than the usual charge, or the charge

imposed by the owner of the patents in some cases. The statute, as before stated, authorizes the use of patented material, and does not require the filing of such an agreement as that above mentioned. *Farmer* v. *Dahl,* 19 Ariz. 395, 171 Pac. 130. It is not claimed that the charge as made is unreasonable in amount, and the Surety Company is in no position to claim now, after the work has been done and the city and the property owners have received the benefit of it, that it should be relieved of liability for the payment of these royalties.

The second assignment of error is that the court erred in allowing interest on the amount of the claims from the date of their filing with the superintendent of streets, for the reason that such claims were not capable of definite ascertainment as to validity or amount until the rendition of judgment, and that interest should only have been allowed from the date of the rendition of the judgment. In the claims and in the pleading of Warren Bros. Company recovery was sought on the basis of a charge of twenty-five cents per square yard. At the close of the evidence it was agreed by counsel for the Warren Bros. Company that judgment should be rendered for only twenty cents per square yard, and the latter amount was made the basis of the judgment rendered. The adjudicated cases present a bewildering variety of rulings with respect to the time from which interest should be computed. The statutes of this state regulate only the rate of interest and are silent as to the time from which it is to be allowed. Both the validity and the amount of the claims in this case were disputed by the Surety Company. It is apparent, therefore, that this is not a case where the amount of the recovery, if recovery be had, was definitely fixed by agreement of the parties or capable of ascertainment by mere com-

putation. In that class of cases, in the absence of special contract, the general rule is that interest should be computed from the time the debt became due. In cases of this character the better rule seems to be that interest is to be computed from the time of the commencement of the action, and we think that rule should be applied in this case. *Hand* v. *Church*, 39 Hun (N. Y.), 303; *Dwyer* v. *United States*, 93 Fed. 616, 35 C. C. A. 488; *McCollum* v. *Seward*, 62 N. Y. 316; *Tucker* v. *Grover*, 60 Wis. 240, 19 N. W. 62.

In this case the date when the claimant was made a party to the action should be deemed the commencement of the action and the time from which interest should be computed, which from the records appears to be March 28, 1917. The judgment should therefore be modified so as to allow interest only from March 28, 1917, and as modified affirmed, with costs to the appellee.

Claim of Phoenix-Tempe Stone Company.

The Phoenix-Tempe Stone Company, hereinafter called the Stone Company, filed its claim for rock furnished for the Construction Company in the making of certain of the improvements and carrying out certain of the contracts. The Stone Company recovered judgment in the court below against the Surety Company, and the latter appealed. The claim of the Stone Company is based upon the terms of an instrument in writing, dated April 28, 1916, whereby the Stone Company leases to the Construction Company a tract of land for the term of one year, "the lessee agreeing to use reasonable effort to quarry the stone therein during the period of the lease, and that it will pay as rent for said premises the sum of eight cents per ton for each ton of stone quarried and removed from said premises. The minimum rental shall be $100; accounts to be kept

of stone quarried, and rentals to be paid monthly.''
That the Construction Company actually used the
quantity of stone named in the work provided in
each of the contracts is shown by the evidence and
found by the court, and that such stone used was
quarried from the premises claimed by the Stone
Company is undisputed. The instrument called a
lease contemplated the severing of stone from the
earth by the Stone Company, the removal of such
severed stone from the premises, and the use of it
in the making of the improvement of the streets,
and payment therefor each month at the rate of
eight cents per ton for the stone so removed. It
was made by the parties for no purpose other than
to provide stone for use in carrying out the paving
contracts awarded to the Construction Company
during the year specified as the term of the lease,
and the contracts involved in this action and the
performance of them by the Construction Company
were in contemplation of the parties. Though called
a lease, it has every element of a contract of sale.
It was simply a means adopted by the parties for
the furnishing by the Stone Company of materials
to be used by the Construction Company in the per-
formance of the contracts. In such a situation it is
clear that the Stone Company furnished the material
for which it makes a claim, and that its claim is
within the terms of the bonds given by the Surety
Company. The language of the Supreme Court of
Kansas, though involving a statute and bond having
somewhat different provisions, is not inapplicable:

''The Surety Company bound itself to pay for
these materials, and it should not be relieved there-
from on any finespun theory that because some third
party did not rent the quarry and buy the dynamite
and the coal, and hire the machinery and make an
aggregate charge of all these items of expense with
a fair profit thereon, and present a bill for the

materials thus produced, it should be wholly relieved from payment of any sum whatsoever for such materials." *Shannon* v. *Abrams*, 98 Kan. 26, Ann. Cas. 1918E, 502, 157 Pac. 449.

The Surety Company asserted that the title to the property from which the stone was taken was in the Arizona Eastern Railroad Company, or at least that the railroad company claimed title to such property, and much testimony was produced on this question. The railroad company is not a party to this action, never filed any claim with the superintendent of streets, and has never appeared or made any claim with respect to the stone furnished the Construction Company. The Surety Company is liable only to those creditors whose claims have been properly filed. It cannot act as the self-constituted champion of the rights of the railroad company, nor claim that it was not liable on its bond because there is a controversy with the railroad company with respect to the title of the land on which the stone quarry is located. The Surety Company cannot be held liable to the railroad company, and in view of the fact that the Construction Company was in no way interfered with while removing the stone, and no claim thereto by the railroad company was made, the Surety Company cannot escape liability by reason of any supposed rights of the railroad company.

The Surety Company contends further that it is not liable for the stone used in one of the improvements designated as the West Washington Street improvement, for the reason that the Stone Company failed to file its claim with the superintendent of streets within thirty days after the completion of the improvement. The statute provides that:

"Any . . . person . . . furnishing materials . . . or who performed work or labor . . . may within thirty days from the time said improvement is completed, file with the superintendent of streets a verified state-

ment of his or its claim, together with a statement that the same, or some part thereof, has not been paid." Paragraph 1962, Rev. Stats. 1913.

The filing of a claim within the time provided by law is necessary under this statute in order to recover upon the bond. The facts upon which the contention of the Surety Company is based are these: The superintendent of streets testified that the improvement was completed November 4, 1916, and on the fourteenth day of November, 1916, he made the assessment provided by paragraph 1964, Revised Statutes of 1913, and issued the warrant provided by that statute, and thereupon notified the legislative body of the municipality, the city commission of the city of Phoenix, of the recording of the assessment and warrant. The city commission thereupon fixed the thirteenth day of December, 1916, as the time when it would hear and pass upon the assessment and the proceedings theretofore had and taken. On December 12, 1916, the M. H. Sherman Investment Company filed with the city clerk an instrument in writing which, after complaining of the amount of the assessment levied against the property of that company and expressing disappointment with the character of pavement laid on West Washington Street, proceeds:

"'And, according to our judgment, the work is not what it should be, and we ask that you give the above protest consideration."

At the hearing on December 20, 1916, the date to which it had been adjourned, the city commission found that the work had not been fully completed in accordance with the plans and specifications, and thereupon suspended the assessment until such time as in the opinion of the commission the work should be fully completed. Thereafter further work was done upon the improvement, and on March 21, 1917,

the city commission passed a resolution reciting that
the work "has now been fully completed in accord-
ance with the plans and specifications," directing
that the date of the assessment and warrant be
changed to the twenty-first day of March, 1917, and
fixing a later date when protests would be received
and the matter further considered by the commission.
On April 18, 1917, the commission passed a further
resolution declaring that no protests had been re-
ceived and resolving that the assessment as levied
by the superintendent of streets be approved.

The time of the completion of an improvement
under the statute here involved is not the time of
the actual cessation of work, but the time when the
municipal authority having jurisdiction to finally
pass upon the question declares it to have been com-
pleted and accepts the work. Such an acceptance
of the work and such fixing of the time of its com-
pletion is binding upon the parties to the contract,
and is also binding upon a materialman or laborer
seeking recovery upon the bond. *Denny-Renton Clay
& Coal Co.* v. *National Surety Co.*, 93 Wash. 103, 160
Pac. 1; *California Portland Cement Co.* v. *Boone*,
181 Cal. 35, 183 Pac. 447. Under the rule as laid
down by these authorities, the time fixed by the city
commission as the date of the completion of the work
is binding upon all parties if the commission had
jurisdiction to consider the matter and make such a
finding.

The claim of the Stone Company was filed on
January 29, 1917. This was prior to the completion
of the work as determined by the city commission,
but such a claim may be filed at any time before the
contract is completed. *French* v. *Powell*, 135 Cal.
636, 68 Pac. 92. If the city commission acted within
its jurisdiction in determining the completion of the

contract, the claim of the Stone Company was filed in ample time.

The Improvement Act of 1912 (chapter 13, title 7, Revised Statutes of 1913), was modeled after the so-called Vrooman Act (Stats. 1885, pp. 160, 161, amended by Stats. 1891, p. 206, and Stats. 1893, p. 172) and the Improvement Act of 1911 of the state of California (Stats. 1911, p. 730). Indeed, in many respects the Arizona act is but a copy of or closely follows the California statutes. But the framers of the Arizona act departed in some respects from the language of the California statutes, and particularly that portion of the act respecting the review by the legislative body of the city of the acts of the superintendent of streets in accepting the work as completed and in issuing the assessment and warrant. The Vrooman Act and the 1911 Improvement Act of California provide, as does the Arizona statute, for an appeal by any person interested from the action of the superintendent of streets to the city council or legislative body of the city. In both the California statutes it is provided that an appeal shall be taken by the interested parties by briefly stating their objections in writing and filing the same with the clerk of said city council. Page on California Street Laws, 1001 and 1035. The Arizona statute provides that the parties desiring to appeal shall file a written notice briefly specifying the grounds of their objections. The language of the Arizona statute is not materially different from that of the California statutes, and in construing it the decisions of the courts of the last-named state are extremely persuasive. It has been held in California that the written objection, in order to constitute an appeal, need not state that the party appeals and need not particularize as to the respects in which they claim that the contract has not been performed. It is

enough that the objectors specify in general language their objection to the acceptance of the work and the assessment for its costs. Accordingly it was held that a statement in a protest that "the work is not being done in a first-class manner, and we ask your honorable body to investigate the matter before we are assessed for its costs; in fact, we hereby protest against paying for so poor a job," and again, "The work is not being done in a proper manner, and we ask your honorable body to investigate the matter before we are assessed for its costs, and we hereby protest against paying for so poor a job," were sufficient to constitute statements of the grounds of objection under the California statute and to give the city legislative body jurisdiction to review the assessment upon appeal. *Belser* v. *Hoffschneider,* 104 Cal. 455, 38 Pac. 312.

Applying this liberal rule, it must be held in this case that the language of the protest, "according to our judgment the work is not what it should be, and we ask that you give the above protest consideration," was a sufficient statement of the grounds of objection, even though confused with much irrelevant and improper matter. The city commission having acquired jurisdiction to consider the matter, its action cannot be questioned on collateral attack, and its determination is not open to review by the courts. *Belser* v. *Hoffschneider, supra; Rubin* v. *City of Salem,* 58 Or. 91, 112 Pac. 713.

This view is taken upon the assumption that an appeal was necessary to confer jurisdiction upon the city commission to review the action of the superintendent of streets and to determine whether or not in fact the work had been completed. But a consideration of the provisions of the Arizona Improvement Act leads to the view that no appeal is necessary to confer such jurisdiction. Under the Cali-

fornia acts, unless an appeal is taken, the action
of the superintendent of streets stands without con-
sideration by the city council or legislative body,
and in the absence of an appeal the action of the
superintendent of streets is final. *Diggins* v. *Hart-
shorne,* 108 Cal. 154, 41 Pac. 283. The California
acts provide that an interested party may appeal
to the city council, and that upon such appeal the
city council may revise and correct the acts and
determinations of the superintendent of streets, etc.
No provision is made for any report by the superin-
tendent of streets to the city council and no pro-
vision for any action other than "upon such appeal."
The Arizona act (paragraph 1965, Revised Statutes
of 1913) provides that:

"Upon the recording of the assessment and war-
rant, the superintendent of streets shall notify the
legislative body of the municipality of such record-
ing, and it shall thereupon fix a time when it will
hear and pass upon the assessment and the pro-
ceedings theretofore had and taken."

It is then provided that the owner or other inter-
ested party may appeal. Then follows this pro-
vision:

"At the time fixed for the hearing or at such time
or times not later than ten days thereafter, to which
such hearing may be postponed, the legislative body
of such municipality shall hear and pass upon all
objections so made and filed. All the decisions and
determinations of said legislative body upon notice
and hearing as aforesaid, shall be final and con-
clusive upon all persons entitled to appeal under
the provisions of this section, as to all errors, in-
formalities, and irregularities which said legislative
body might have remedied or avoided at any time
during the progress of the proceedings. In the
event that the legislative body finds that the con-
tract has not been fully performed, it shall suspend
the assessment until such time as in its opinion said
contract shall thereafter be fully performed, where-

upon by its order the date of said assessment and warrant shall be changed to such date and said warrant and assessment shall thereafter be effective and the amounts thereof be payable as of the date of said order. It may modify the amounts of the several assessments after hearing, and may in its discretion order a new assessment to be made.''

It will be seen that by this statute, upon the recording of the assessment and warrant, the superintendent of streets must in all cases give notice to the legislative body of the city. That body must thereupon fix a time for hearing and passing upon the assessment and the proceedings theretofore had. In a separate and distinct sentence it is provided that, in the event that the legislative body finds the contract has not been fully performed, it shall suspend the assessment and thereafter order its redating at such time as it shall determine that the contract has been performed. But for the expression ''the legislative body of such municipality shall hear and pass upon all objections so made and filed'' there would be no question but that the matter of passing upon the assessment and previous proceedings was before the municipal legislative body for such action as might be deemed proper, and that the provision for an appeal was only to enable the individual property owner or other aggrieved person to present any objection he might have to the assessment or other proceedings. The provisions of the Arizona statute above quoted are a marked departure from the analogous provisions of the Vrooman and other California acts, and it must be presumed that the intent of the legislature was to change the effect of the statute after which the Arizona Improvement Act was generally modeled. The provision, therefore, that the legislative body shall hear and pass upon all objections so made and filed, in view of the other provisions of the statute, cannot be held to

limit the power of that body to cases in which an appeal is taken, but only to provide that, if any objections be filed, they shall be heard and passed upon. Under the statute quoted the city council or other municipal legislative body has jurisdiction to review the assessment and the proceedings antedating it, as well as the action of the superintendent of streets, whether an appeal be taken or not, and its determination as to the time of the completion of the improvement is, under the authorities above cited, conclusive upon all interested parties. It must be held, therefore, that the claim of the Stone Company was filed in time. The judgment of the court below on this claim must be affirmed.

### Claim of the Barrett Company.

The Barrett Company furnished a paving material called tarvia for the improvement of West Washington Street. Judgment was rendered in its favor in the court below against the Surety Company, and the latter appeals. The appellant concedes that the evidence is sufficient to sustain the judgment as to the amount, and states in its brief that the sole question raised and intended to be raised is that, the claimant having failed to file its claim with the city street superintendent within thirty days after the completion of the improvement, its right of action on the bond is barred. This claim is disposed of by what has been said with respect to the claim of the Phoenix-Tempe Stone Company, and the judgment in favor of this claimant is accordingly affirmed.

We have not overlooked the motions to dismiss made by some of the appellees, which were elaborately discussed in the briefs. It will be sufficient to say that we do not deem them well taken, and, as they are not of a character likely to arise in future cases, no discussion is necessary.

With the modification indicated with respect to one of the claims, the judgment, so far as it is before this court for review, is affirmed.

CUNNINGHAM, C. J., and ROSS, J., concur.

Judge BAKER, being disqualified, took no part in the decision of the above cases.