UNITED STATES, to Use of SICA, v. KIMPLAND et al.

(Circuit Court, E. D. New York. April 18, 1899.)

1. PRINCIPAL AND SURETY—BOND OF CONTRACTOR FOR PUBLIC WORK—FURNISHING LABOR OR MATERIALS.

The condition in a bond of a contractor with the United States for public work, prescribed by 28 Stat. 278, which requires that the contractor shall make prompt payments to all persons supplying him labor and materials in the prosecution of the work, is intended to cover payments only for the visible material furnished for direct use and incorporation in the work, and of wages to the men whose services are directly employed in doing the work; and an action against the sureties on such a bond can only be maintained, under the statute, by one who has title to a claim for labor or materials so supplied. A person furnishing board and lodging to laborers employed on the work does not supply either labor or materials, within the statute.

2. SAME—ACTION ON BOND.

Plaintiff brought action, under 28 Stat. 278, on the bond of a contractor for public work, conditioned, as therein required, for the payment by the contractor of all persons supplying him labor and materials in the prose-

cution of the work; alleging that she furnished board and lodging to laborers employed on the work, under an agreement between herself, the laborers, and the contractor, by which the latter agreed to pay for such board and lodging, retaining the amount from the wages due the men. *Held*, on demurrer, that the complaint alleged facts which enabled the plaintiff to maintain an action against the contractors, and also the sureties, unless the contractors had paid the laborers entitled to the wages, without knowledge on the part of the sureties of the right of the plaintiff to receive the wages, or some part thereof, and that it was not necessary that the complaint should negative such payment by the contractors.

This is an action in the name of the United States, for the use and benefit of Ellen Sica, against Charles N. Kimpland, impleaded with others, on a bond given by contractors for public work. Heard on demurrer of the defendant Kimpland to the complaint.

Wilson, Bennett & Underhill (Mr. Bennett, of counsel), for plaintiff.
Kellogg, Rose & Smith (Mr. Rose, of counsel), for defendant Kimpland.

THOMAS, District Judge. The complaint shows that, by contract concluded August 11, 1897, certain persons, under the firm name of Mairs & Lewis, agreed with the United States to furnish all labor and materials for the construction of two gun emplacements and a mining casement on Plum Island, in the state of New York, together with a wharf or pier, in accordance with certain specifications; that Kimpland, defendant, and another, by bond, guarantied that Mairs & Lewis "should, in all respects, duly and fully observe and perform, all and singular, the covenants, conditions, and agreements in and by the said contract agreed and covenanted by said Mairs & Lewis to be observed and performed, according to the true intent and meaning of the said contract, * * * and shall promptly make full payments to all persons supplying them labor or materials in the prosecution of the work provided for in said contract." This bond was given pursuant to an act of congress passed in 1894, which provides that:

"Hereafter any person or persons entering into a formal contract with the United States, for the construction of any public building, or the prosecution and completion of any public work, or repairs upon any public building or public work, shall be required before commencing such work to execute the usual penal bond, with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them labor and material in the prosecution of the work provided for in such contract; and any person or persons making application therefor, and furnishing affidavit to the department under the direction of which said work is being, or has been, prosecuted, that labor or materials for the prosecution of such work has been supplied by him or them, and payments for which have not been made, shall be furnished with a certified copy of such contract and bond, upon which said person or persons supplying such labor or materials shall have a right of action, and shall be authorized to bring suit in the name of the United States for his or their use and benefit, against said contractor and sureties," etc. 28 Stat. 278.

On the 3d day of September, 1897, the contractors agreed, in writing, with Ellen Sica, that the latter should "keep a boarding house on Plum Island while such work shall continue, whether it be for a longer or shorter period than one year, and to board all the workmen of second parties engaged in said work who may wish to board with

her, and furnish them such other supplies as they may need, and render to second parties, once in each month, a bill of the amount of the indebtedness of each of said workmen to her for such board and supplies." In consideration whereof, the second parties agreed "to pay the bills which shall be presented to them, as above provided, by first party, for board and supplies furnished by her to said workmen during the continuance of the said work, out·of any moneys which may be due from second parties to said workmen as wages for their work, within reasonable time after the presentation thereof, provided that there shall be sufficient sums due to said workmen, respectively, from second parties to pay their respective bills, and provided that said workmen shall respectively consent that so much of their wages as shall be necessary for that purpose may· be paid by second parties to first party, in payment of their respective bills for board and supplies." The complaint alleges that, pursuant to this contract, said Sica furnished board to the contractors' laborers, bread and other merchandise to the contractors, and loaned money to the contractors on account of the said contract with the government, for which payment has not been made; and suitable allegations of compliance with the terms of the contract between the said Sica and the contractors are made; and judgment therefor is demanded against the contractors and their sureties. And to this complaint one of the sureties demurs. The learned counsel for the plaintiff insists that the "furnishing of board and necessaries to the men engaged in this government work constituted a supplying of labor, within the meaning of this statute"; and that "it is literally true that the plaintiff supplied labor to the contractors, by assisting the contractors in paying for their labor in part"; and also that it was supplying material; and the argument is fortified by the decision in Lybrant v. Eberly, 36 Pa. St. 347, where the contractor agreed to pay his laborers, and also to board them, as part of the consideration, and the court stated that "the board of the hands appears to have been part of the compensation to be paid for the work and labor in the erection of a house, and, therefore, the cost of it is a proper item in the claim for a lien." The defendant's answer is that the agreement of the contractors was that they would be answerable for the board bills of their men, so far as they had wages therefor and the men consented to the withholding thereof and the payment of the same to the boarding-house keeper; and cites McCormick v. Water Co., 40 Cal. 185, where it was decided that a person hired by a contractor to cook for the men engaged in a construction was not entitled to a lien on account of services rendered in that capacity. The bond and statute are similar in their provisions, and it is quite unimportant whether the language of one or the other be taken for construction. In either case, the liability of the sureties will not be extended by implication, or beyond the fair meaning of the statute or bond. The statute required the bond as security for the performance of the work of construction, and to insure the payment for "labor and materials" supplied "in the prosecution of the work." To execute the work, materials were needed. Such materials must be fashioned for placement in the structure, conducted to such place, and deposited therein. This required

labor. Hence, the United States required that these two essential elements of the construction should be paid for by the contractors, thereby avoiding all trouble from liens, and affording security to those inclined to aid the work. The first question is this: Is the board, which the contractors have agreed conditionally to pay out of the men's wages, labor or material supplied in the prosecution of the work? Sica gave food and necessaries to the men, to give the men strength and facilities to labor; hence, the men worked. But this labor was not the service rendered by Sica. But the argument proceeds: (1) The men labored. (2) Sica furnished board for a portion of their wages. (3) Hence, she advanced an equivalent of money to pay the wages of the laborers. (4) Hence, she furnished labor. It is considered that the word "labor," as used in the statute, does not admit of such remote and indirect equivalents, but requires the sureties to insure the payment for the visible material that was furnished for direct use and incorporation in the work, and the payment of the wages to the men whose service was directly employed in doing the work. Thereby the sureties had a clear conception of the limits of their liability. They were not concerned to see to it that money borrowed or advanced to aid the prosecution of the work should be repaid; that persons who furnished stores or food or lodging to the workmen, under an agreement by the contractor to pay for the same out of the wages due those benefited, should be paid. The contractor was under no such primary duty to the United States. His duty as a contractor, and as regards the sureties, was to pay his laborers their wages, and allow them to buy their board and clothing where they would, and also to pay the persons supplying the material, and allow them to disburse their own money. The condition that the "contractors shall promptly make payments to all persons supplying" them "labor and materials in the prosecution of the work" means, at least as regards the sureties, directly what it states; so that only he who has title to the claim for the labor or material furnished, from the person furnishing it, could invoke the benefit of the statute. This summarizes the court's conception of the meaning of the statute. In the case at bar, Sica has contributed neither labor nor material, within the contemplation of the statute.

The next inquiry is this: Does Sica stand in the place of the workmen whom she boarded under the arrangement, so as to entitle her to sue the contractors and sureties for their wages? The contractors agreed to pay Sica the amount of the board, from moneys due workmen boarded by Sica, if the boarders consented. Hence, if Sica boarded A., a workman, and he consented, so much of the money due A. as should be necessary to discharge A.'s board bill was payable to Sica. This arrangement, after A.'s consent, gave Sica the right to recover from Mairs & Lewis such sum. Let it be supposed that the contractors owed A. $50, and that there was due Sica $25 for A.'s board. Now, by the tripartite agreement, A. releases the contractors from payment to A. Sica has no claim against A., and upon the payment Sica has no claim against the contractors. The agreement amounts to the supplying of A. with board, and the promise to accept, in payment, such wages as the contractors might owe

A. In that case, the contractors would have no right to pay the sum to A., nor would the latter be entitled to receive it. Both A. and the contractors have agreed that it shall be paid to S. The contractors owe the duty of payment to S., and to nobody else. The three persons have agreed that such shall be the legal status of the parties, and it is clear that no one of such parties should be heard to say that the payment should not be made according to the exact terms of the agreement.

The next inquiry is this: If the contractors owe the duty of paying a portion of the money due, to Sica, instead of paying it to the persons furnishing it, and fail to do so, do the sureties assure such payment? The obligation of the sureties is that they will guaranty to A. full payment for all the labor furnished. Hence, if the contractors should not pay A., the latter could sue the contractors or the sureties, or both, for the same, in an action at law. But A. has agreed with the contractors and S., for a legal consideration, that the contractors shall not pay for the labor to A., but to S., who has boarded A. Does the liability of the surety to pay A., in default of the contractors paying him, bind the surety to pay S., whom both the contractors and A. have substituted as the creditor, in such a way that she could sue the contractors? This may be illustrated. Suppose that A. furnished, for use on the work, a car load of stone to the contractors, at the agreed price of $100, and that the contractors and A. agreed that all moneys for stone delivered should be paid to S., who, upon such mutual agreement, had boarded S.'s men while quarrying the stone. Now, the sureties have agreed that they will see that A. is paid for his stone, and must do so. Do they also agree that they will see that any person who is legally subrogated to A.'s right of payment shall be paid? That is, do the sureties impliedly agree in the bond, construed in the light of the statute, that they will pay A., or anybody to whom A. sells his claim, if the contractors not only had notice of the sale, but also procured the sale, with the view of helping along the work? Of course, if the sureties knew of the arrangement, and consented thereto, this immediate question would be of easier solution; but there is no evidence of such knowledge or notice to the sureties; and the question is whether the surety impliedly agreed to guaranty payment to such persons. Let the proposition be systematically stated: (1) The contractors agreed to pay A. for his labor. (2) The contractors, by a binding arrangement, agreed to pay an assignee of A. (3) Does the sureties' agreement to pay A. bind them to assure the assignee of A., without notice to them of the assignment? If the contractors had not paid A., and it appeared that thereafter the claim was owned by S., justice would require, if nothing in the form of the remedy or otherwise, prejudicial to the sureties, stood in the way, that the payment should be made to S., and all technicalities should be swept aside to do justice. But, if payment has been made to A. without any notice or knowledge of S.'s claim by the surety, then the justice of the case, and maybe the rule of law, would be different. The complaint does not show whether the contractors have paid A., and the court does not consider that it is required to pass upon a question which may be corrected by a new

pleading, if the demurrer be sustained. It may be that a final conclusion could be reached without use of the absent facts; but it is deemed better to forbear a decision until all the facts shall be before the court, when the protection of the rights of the parties may be more intelligently attempted; and this is so, although it be the duty of the plaintiff to plead the facts essential to a just determination. Therefore, the question of the liability of the sureties for the payment of the money to Sica, with the solution of any pertinent technical questions relating thereto, is reserved until the precise situation may be known, and meanwhile the demurrer is overruled. The defendant may, if so advised, plead over within 20 days.