ILLINOIS SURETY CO. v. UNITED STATES, to Use of MILLER et al.

(Circuit Court of Appeals, Second Circuit. February 10, 1914.)

No. 147.

1. ACTION (§ 22*)—CONTRACTORS' BONDS—CREDITORS' ACTION—FORM.

Under Act Aug. 13, 1894, c. 280, 28 Stat. 278 (U. S. Comp. St. 1901, p. 2523), as amended by Act Feb. 24, 1905, c. 778, 33 Stat. 811 (U. S. Comp. St. Supp. 1911, p. 1071), requiring contractors with the United States on any public work to furnish a bond, and providing that any person furnishing labor or materials may intervene in any action thereon by the United States, or may sue thereon if no action is brought by the United States, and that in such suit other creditors may file their claims and be made parties thereto, it is intended that there shall be one suit in which all creditors shall be given notice, and an opportunity to intervene and share ratably in the fund, and this distinctly marks the proceeding as an equitable one, and hence, where the action was brought at law, it should have been transferred to equity.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 124–139, 143, 145; Dec. Dig. § 22.*]

2. ACTION (§ 37*)—FORM—OBJECTIONS—MANNER OF RAISING.

While the better way to have raised the objection that an action brought at law should have been brought in equity would have been by a motion to transfer it to the equity calendar, it was sufficiently raised by objections that the causes of action were in equity and that the court had no jurisdiction.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 311–319; Dec. Dig. § 37.*]

3. PRINCIPAL AND SURETY (§ 104*)—DISCHARGE—EXTENSION OF TIME OF PERFORMANCE.

A surety on the bond of a contractor with the United States, conditioned for the performance of the contract according to its true intent and meaning, "as well during any period of extension of said contract that may be granted on the part of the United States as during the original term," was not discharged by an extension of the time of performance granted without the surety's consent, as the quoted provision could only be given effect by applying it to extensions granted by the United States without consulting the surety.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 186–190, 193–195, 197–199, 200; Dec. Dig. § 104.*]

4. UNITED STATES (§ 67*)—CONTRACTORS' BONDS—STATUTORY PROVISIONS.

The bond of a contractor with the United States, conditioned for the performance thereof during any period of extension of the contract, granted by the United States, as well as during the original term, was not inconsistent with Act Feb. 24, 1905, c. 778, 33 Stat. 811 (U. S. Comp. St. Supp. 1911, p. 1071), requiring contractors to execute the usual penal bond with the additional obligation to promptly make payment to all persons supplying labor and materials.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 50; Dec. Dig. § 67.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the District Court of the United States for the Eastern District of New York.

Action by the United States, to the use of Frank Miller and others, against the Illinois Surety Company. Judgment for the usees, and defendant brings error. Reversed, with directions.

Nelson L. Keach, of New York City (L. Laflin Kellogg and Alfred C. Pette, both of New York City, of counsel), for plaintiff in error.

George W. Bristol, of New York City (Woolsey Carmalt, of New York City, of counsel), for defendants in error Hazell and others.

George R. Coughlan, of New York City, and Arthur M. Allen, of Providence, R. I. (Henry W. Goodrich, of New York City, of counsel), for defendant in error J. S. Packard Dredging Co.

King & Booth, of New York City (Frederick P. King, of New York City, of counsel), for defendant in error Miller.

Carpenter & Park, of New York City (Henry E. Mattison, of New York City, of counsel), for defendant in error E. S. Belden & Sons.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. October 13, 1909, Mitchell & Co., entered into a contract with the United States for certain work at Ft. Terry. They gave a bond in the sum of $28,000 with the Illinois Surety Company, the defendant, as surety, providing:

"Now, therefore, if the above-bounden Mitchell & Co., their heirs, executors, or administrators, shall and will, in all respects, duly and fully observe and perform all and singular the covenants, conditions, and agreements in and by the said contract agreed and covenanted by said Mitchell & Co. to be observed and performed according to the true intent and meaning of the said contract, and as well during any period of extension of said contract that may be granted on the part of the United States as during the original term of the same, and shall promptly make full payments to all persons supplying them labor or materials in the prosecution of the work provided for in said contract, then the above obligation shall be void and of no effect; otherwise to remain in full force and virtue."

The contract required the work to be completed on or before September 10, 1910, and 20 per cent. of the price was to be retained by the United States until final completion. Time of performance was extended to January 13, 1911, with the written consent of the surety company. The contractors, however, being unable to complete by that date, the United States, without consulting the surety company, permitted them to complete at any time beyond that date. The contract was completed March 2, 1911, on which date the United States paid the contractors the reserved 20 per cent., amounting to $10,947.81.

[1] September 20, 1911, the Frank Miller Lumber Company, a subcontractor which had furnished to Mitchell & Co. materials which were used in the work, began a suit on the bond. September 28th the District Judge made an order requiring notice to be sent by mail on or before October 7th to all known creditors of Mitchell & Co. and published in the Brooklyn Daily Eagle to the effect that the suit had been brought and that all creditors might intervene therein. Thereafter petitions of various creditors were filed, asking leave to intervene as parties plaintiff and to have such other and further relief

as to the court may seem just and proper. Upon these petitions the District Judge made orders of intervention, and thereafter the petitioners served complaints as intervening plaintiffs. The Illinois Surety Company having answered the complaints, the cause came on for trial on the law calendar in the Eastern District of New York. When the cause was reached, the Illinois Surety Company objected that the causes of action in the complaints were in equity and not at law and that the court had no jurisdiction to try the suit. This motion was overruled and an exception taken. After the testimony was in, the court directed a verdict in specific amounts for the various parties plaintiff, to which the Illinois Surety Company excepted.

The act of August 13, 1894, entitled "An act for the protection of persons furnishing materials and labor for the construction of public works," did contemplate separate actions at law upon the bond by any and all creditors in the name of the United States but for their own use. Parties obtaining judgment would be paid in the order in which actions were brought. Congress subsequently amended the statute by the act of February 24, 1905, under which the suit in question was instituted, so as to read as follows:

"That hereafter any person or persons entering into a formal contract with the United States for the construction of any public building, or the prosecution and completion of any public work, or for repairs upon any public building or public work, shall be required, before commencing such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract; and any person, company, or corporation who has furnished labor or materials used in the construction or repair of any public building or public work, and payment for which has not been made, shall have the right to intervene and be made a party to any action instituted by the United States on the bond of the contractor, and to have their rights and claims adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the claim and judgment of the United States. If the full amount of the liability of the surety on said bond is insufficient to pay the full amount of said claims and demands, then, after paying the full amount due the United States, the remainder shall be distributed pro rata among said interveners. If no suit should be brought by the United States within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials shall, upon application therefor, and furnishing affidavit to the department under the direction of which said work has been prosecuted that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, be furnished with a certified copy of said contract and bond, upon which he or they shall have a right of action, and shall be, and are hereby, authorized to bring suit in the name of the United States in the Circuit Court of the United States in the district in which said contract was to be performed and executed, irrespective of the amount in controversy in such suit, and not elsewhere, for his or their use and benefit, against said contractor and his sureties, and to prosecute the same to final judgment and execution: Provided, that where suit is instituted by any of such creditors on the bond of the contractor it shall not be commenced until after the complete performance of said contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract, and not later:. And provided further, that where suit is so instituted by a creditor or by creditors, only one action shall be brought, and any creditor may file his claim in such action and be made

party thereto within one year from the completion of the work under said contract, and not later. If the recovery on the bond shall be inadequate to pay the amounts found due to all of said creditors, judgment shall be given to each creditor pro rata of the amount of the recovery. The surety on said bond may pay into court, for distribution among said claimants and creditors, the full amount of the sureties' liability, to wit, the penalty named in the bond, less any amount which said surety may have had to pay to the United States by reason of the execution of said bond, and upon so doing the surety will be relieved from further liability: Provided further, that in all suits instituted under the provisions of this act such personal notice of the pendency of such suits, informing them of their right to intervene as the court may order, shall be given to all known creditors, and in addition thereto notice of publication in some newspaper of general circulation, published in the state or town where the contract is being performed, for at least three successive weeks, the last publication to be at least three months before the time limited therefor."

We see in this amendment an intent on the part of Congress to substitute, for a number of independent actions at law in which vigilant had a priority over nonvigilant creditors, a suit in which all creditors shall be given notice and an opportunity to intervene and share ratably in a fund intended for the equal protection of all. This provision, which is not adapted to nor indeed available in actions at law, distinctly marks the proceeding as equitable. We are not convinced by the able presentation of the contrary view in United States v. Stannard (D. C.) 207 Fed. 198, which is the only case in which the question has been raised down to the present time. In the First circuit, where under the act of 1894 a large number of actions at law had been begun by creditors upon such a bond, an application by the surety to a court in equity to restrain the proceedings at law and bring all the creditors into court for an accounting was sustained. American Surety Co. v. Lawrenceville Cement Co. (C. C.) 96 Fed. 25.

[2-4] The better way to have raised the question would have been by moving to have the cause transferred from the law to the equity calendar, but it has been sufficiently raised. As the cause will have to be tried again, we think it proper to express our opinion on a question not actually necessary to this decision, but which is sure to arise again. The defendant contends that the indefinite extension of the contract given by the United States without its consent has discharged it as surety. But the provision in the bond that the obligation of the surety shall continue "as well during any period of extension of said contract that may be granted on the part of the United States as during the original term of the same" leads to a contrary conclusion. If extensions with the surety's consent had been contemplated, the clause would be one of pure supererogation. It can only be given effect by applying it to extensions granted by the United States without consulting the surety. The statute does not prescribe the form of the bond, but only that the surety shall be bound for, first, the faithful performance of the contract, and, second, for the prompt payment of all persons who shall have furnished labor and materials in the prosecution of the work, provided for in the contract. The provision in the bond as to extensions is in no way inconsistent with the statute and must be given effect.

The judgment is reversed, and the court below directed to transfer the cause to the equity calendar for hearing.

## Modification of Mandate.

The mandate may be modified so as to provide that the judgment be reversed, without prejudice to a motion in the District Court to transfer the cause to the equity calendar.