UNITED STATES FIDELITY & GUARANTY CO. et al. v. HENDERSON COUNTY et al.    (No. 986.)

(Court of Civil Appeals of Texas. Beaumont. June 12, 1923. Rehearing Denied June 27, 1923.)

1. Principal and surety ☞149—Statutes as to time of suit on contractors' bond construed.

Complete Tex. St. 1920, arts. 6394f, 6394j (Vernon's Sayles' Ann. Civ. St. 1914, arts. 6394f, 6394j), as to suit on bond of public contractor, require that interventions be filed before the case is tried, and, if the case is tried after due publication of lis pendens notice has been made, all interventions not filed are barred, though the one-year period of limitation has not matured, and it is not the law that the suit cannot be tried until twelve months after completion of the work.

2. Judges ☞56—Judge's disqualification to try case not disqualification to call special term.

A judge's disqualification to try a case did not disqualify him to call the special term of court at which it was tried.

3. Highways ☞113(5) — Mention of wrong statute in highway contractors' bond held clerical error.

In highway contractors' bond, reference in the plans and specifications to Complete Tex. St. 1920, art. 5623a (Vernon's Ann. Civ. St. Supp. 1918, art. 5623a), relating to private contractors, was incidental and obvious error, and should be disregarded and the contract and

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

bond construed by the terms of art. 6394f (Vernon's Sayles' Ann. Civ. St. 1914, art. 6394f).

**4. Statutes ☞226 — Where federal statute adopted, construction given it by federal courts is persuasive.**

Where a state adopts a federal statute, the construction given it by the federal courts is persuasive, if not conclusive, of its proper construction.

**5. Highways ☞113(5) — Surety on highway contractors' bond not liable for grocery bills unless boarding laborers was necessary to the work.**

A surety on highway contractors' bond was not liable for grocery bills unless furnishing board by the contractors to laborers was a necessary part of their work.

**6. Highways ☞113(5) — Surety on highway contractors' bond held liable for feed bill for mules.**

Surety on highway contractors' bond *held* liable for feed bills for feed of mules, which feed appeared to have been necessarily consumed in the work.

**7. Highways ☞113(5)—In suit on contractors' bond, allegation that interveners were assignees of claims held sufficient.**

In an action on highway contractors' bond, *held*, that an allegation that certain interveners were assignees of claims for material sold by other parties to the contractors was sufficient, in the absence of exceptions demanding a more particular statement of the nature and character of the assignments, their date, and whether oral or in writing.

**8. Evidence ☞165(1) — Parol evidence of written assignments held inadmissible.**

In action upon highway contractors' bond, where it developed on trial that certain assignments of claims for material sold were in writing, it was error to receive parol evidence of the contents of such assignments.

**9. Highways ☞113(5)—Materialmen held not required to exhaust remedy against subcontractors before proceeding against contractors and surety.**

Where highway contractors and their surety were primarily liable, under their contract and bond, to all who furnished material required to complete the work, holders of claims for furnishing such material were not required to exhaust their remedy against subcontractors who purchased such material, before proceeding against the contractors and their surety.

**10. Highways ☞113(5)—Claim for teams furnished on highway contract held for jury.**

In action on highway contractors' bond, in which there was an issue whether an intervening claimant did the work and furnished the material which formed the basis of his intervention as a contractor and not as an employee of one J., and it appeared that while J., was the owner of the teams and tools and was to receive from intervener, as rent for such teams, all above a certain sum, yet intervener was to have charge of the teams, do the work, pay all the expenses, collect for the services, and pay J. the balance above the agreed

amount, and that under such contract he did the work, expended the money, and purchased the material which formed the basis of his intervention, his claim was properly submitted to the jury.

**11. Principal and surety ☞99 — Subletting highway contract did not release surety.**

Where highway contract provided that the original contractors could not sublet the work without the written consent of the state highway engineer, but a large part of the work was done by subcontractors without that consent, this did not release the contractors' surety; the provision being for the benefit of the county, which waived it by accepting the work of subcontractors without protest.

**12. Appeal and error ☞1050(1)—Principal and surety ☞160—Admission of compromise judgment in favor of county held error, but not prejudicial in suit on highway contractors' bond.**

In action on highway contractors' bond, where interventions were filed by materialmen, *held*, that it was error to permit interveners to offer in evidence a compromise judgment between the county and the highway contractors, but that such error was not prejudicial, as the only question was the amount due on each intervention for such material.

**13. Trial ☞194(11) — Charge held not on weight of evidence.**

In action on highway contractors' bond, where interventions were filed by materialmen, a charge that, if the contractors failed to complete the road in accordance with their contract or to pay off the labor or material on the completion of the road, both the contractors and their surety were liable to any one furnishing labor or material for building the road, *held* not on the weight of evidence.

*On Motion for Rehearing.*

**14. Appeal and error ☞747(1) — Appellee may cross-assign errors.**

In action on highway contractors' bond where interventions were filed by materialmen and certain interveners were awarded judgments against contractors and their surety for certain items but were denied recovery on other items, and the defendants appealed from the judgments in favor of such interveners, this brought up for review not only all errors assigned but also all errors cross-assigned by those interveners, under the rule that a successful party may cross-assign errors against appellant without perfecting an independent appeal; but where no judgment was entered in favor of other interveners against the contractors and their surety, and hence the contractors and their surety did not appeal from judgment in their favor against such interveners, the latter could not cross-assign error against such defendants, but their only relief against judgment denying them recovery was by an independent appeal.

**15. Appeal and error ☞671(4)—Where plea of intervention not in transcript, intervener's assignments of error not considered.**

In action on highway contractors' bond, where materialmen filed interventions, *held*,

that cross-assignment of an intervener would not be considered where the plea of intervention was not in the transcript.

**16. Subrogation ⊗⇒23(8)—Where claims were extinguished when paid, there was no equitable assignment.**

In action on highway contractors' bond, intervener claiming for money advanced to pay labor claims could not recover, where the labor claims were extinguished when paid and could not be urged under the theory of equitable assignment.

**17. Appeal and error ⊗⇒747(1)—Appeal by one set of defendants did not bring up judgment between other defendants.**

In action upon highway contractors' bond, wherein certain materialmen filed interventions, and defendant contractors and their surety appealed from judgment in favor of certain interveners, such an intervener could not cross-assign error as respects a ruling denying him judgment against another intervener.

**18. Highways ⊗⇒113(5)—Surety for contractors not liable for lumber not consumed in the work.**

In action upon highway contractors' bond, wherein certain materialmen filed interventions, held, that the surety was not liable for lumber furnished the principal contractors but not shown to have been used in the construction of the road; that is, not shown to have been entirely consumed in such work.

**19. Highways ⊗⇒113(5)—Surety of contractors not liable for repairs to tools or machinery.**

In action upon highway contractors' bond, wherein certain materialmen filed interventions, held, that surety was not liable on claim for blacksmith labor in repairing tools and machinery used on the work.

**20. Appeal and error ⊗⇒1170(3) — Error in failing to require more particular pleading of assignments held not prejudicial.**

In action upon highway contractors' bond, wherein certain materialmen filed interventions, where defendants, contractors and their surety, demanded more particular plea of alleged assignments of claims, but the trial court ruled adversely on such exceptions, any error in such ruling was not prejudicial, where no suggestion of surprise was made when proof was offered, in view of Rule 62a (149 S. W. x).

Appeal from District Court, Henderson County; L. D. Guinn, Judge.

Action by Henderson County and others against the United States Fidelity & Guaranty Company and others, in which interventions were filed. From judgment for interveners, defendants appeal. Affirmed in part, in part reversed and rendered, and in part reversed and remanded.

Seay, Seay, Malone & Lipscomb, of Dallas, and Miller & Miller, of Athens, for appellants.

E. A. Landman, of Athens, for appellees.

WALKER, J. In 1919, Henderson county entered into a written contract with Williams, Burk & Co., for the improvement of one of its public roads. The following provisions of the contract are material to the facts of this appeal:

"This agreement made this 29th day of December, 1919, by and between Henderson county, Tex., represented by the commissioners' court, party of the first part, and Willams, Burk & Co., composed of J. P. Williams, T. J. Burk and W. W. Scarborough of Jacksonville, Tex., his their executor, administrators, heirs, successors or assigns, party of the second part; and subject to the approval of the Texas State Highway Commission:

"Whereas, the said county, known as the party of the first part, desires to enter into a contract with the above-mentioned firm for the improvement of the road bridge highway No. 19, Job No. 108 'A' in the said county, commencing at station 264 100 near six miles north of Athens, Tex., and extending thence to station 1003 1 20 or as far as the money available will construct in accordance with the provisions of the state statutes and of the notice to contractors, specifications, proposal, and plans marked —— annexed hereto, and made part hereof, and

"Whereas, the party of the second part has been engaged in and now does such work and is fully equipped, competent and capable of performing the above desired and outlined work, and is ready and willing to perform such work in accordance with the provisions of the attached notice to contractors, specifications, proposal and plans, marked ——, now witnesseth:

"That for and in consideration of the prices and agreement mentioned in the proposal hereto attached and made part of this contract, the said contractor agrees to do at his own proper cost and expense, all the work necessary for the improvement of road bridge No. 19 in Henderson county, in accordance with the provisions of the attached notice to contractors, specifications, proposal and plans which are made part of this contract, and in full compliance with all of the terms of the specifications and requirements of the engineer."

The plans and specifications contained the following provisions material to this appeal:

"Contract. The agreement covering the performance of the work. It shall include the plans and specifications and shall be held to cover any or all work, labor, implements, machinery, equipment and materials that are required to complete the work indicated in a proper and satisfactory manner. Work shown on the plans and not mentioned in the specifications, or vice versa, shall be done the same as if shown by both, and in case of conflict the decision of the engineer shall be final and conclusive."

"Contractors' Bond. The contractor shall fine a guaranty of his faithful performance of said contract, a good and sufficient bond in compliance with article 5623a, Senate Bill No. 79, chapter 143 of the 34th legislature 1915, which requires that the contracts less than $1,000 a bond for full amount of contract be

given, for those over $1,000 and not over $5,-000, three-quarters of contract price, and those over $5,000, and not over $100,000, one-half contract price, those over $100,000 one-third contract price be given. Said bond to be furnished by a surety company authorized to do business in the state of Texas, or responsible persons acceptable to party of the first part. In the latter instance, it is necessary that those signing bond be certified as financial solvent to full amount of bond."

Williams, Burk & Co., as principal, and United States Fidelity & Guaranty Company, as surety, executed to Henderson county the following bond:

"Contractors' Bond. 'Know all men by these presents: that we, Williams, Burk & Co., of Jacksonville, Cherokee county, and state of Texas, principal, and United States Fidelity & Guaranty Company of Baltimore, Md., as surety, are held and firmly bound unto the county of Henderson, state of Texas, in the penal sum of forty-three thousand two hundred twelve and $32/100$ dollars ($43,212.32) lawful money to the United States, to be paid to said county or to its certain attorneys or assigns, for which sums of money, well and truly to be paid, we bind ourselves, our heirs, successors, executors, and administrators, jointly and severally, firmly by these presents.

'"Sealed with our seals and dated this eighth day of January, A. D. 1920.

"The condition of this obligation is such that if the said bounden principal Williams, Burk & Co. shall in all things well and truly perform all the terms and conditions of the aforegoing contract, to be by them him performed, and within the time therein mentioned, and shall pay all lawful claims for labor performed in and about the construction of said road bridge, and shall have paid and discharged all liabilities for injuries which have been incurred in and about the said construction, under the operation of the statutes of the state, then this obligation is to be void; otherwise to be and remain in full force and virtue.

"Done in the presence of: Williams, Burk & Co., by W. W. Scarborough. [Seal.] United States Fidelity & Guaranty Company, by John Smallmon, Atty. in Fact. [Seal.]

"I certify that the above is a true and correct copy of the original. Chas. H. Kendall, Asst. State Hwy. Engr. [Seal.]"

As the contractors did not complete the work to the satisfaction of Henderson county, it took charge of the work and had it completed by other contractors and then filed suit against the original contractors and their surety on the foregoing bond. After the suit was filed, a large number of claimants intervened upon the allegation that the contractors and their sureties were liable to them upon the bond for labor and material furnished in the construction of the road. Pending trial, the contractors and the surety company settled the claim of Henderson county under a compromise agreement, by the terms of which they paid the county $8,000, which agreement was embodied in a judgment duly entered of record. W. R.

Bishop, the regular district judge of Henderson county, was disqualified to try this case, and upon his certificate to that effect, the Governor designated Judge L. D. Guinn of the Second district, who proceeded to try the case on the 10th day of April, 1922, at a special term of the court called by Judge Bishop. This appeal is prosecuted by the contractors and their surety from a judgment entered against them in favor of the several interveners upon the answers of the jury to special issues. The transcript in this case contains about 1,000 pages, the statement of facts 260 pages, and the briefs about 500 pages. Appellants are urging 123 assignments of error, and appellees many cross-assignments. While under one style and number, this appeal, in effect, embodies about 30 different records, relating to the several interveners, many of them presenting questions peculiar to the several interventions. Manifestly, it is impracticable to take up appellants' many assignments and discuss them as they relate to each intervention. We believe it is sufficient to dispose of this appeal by discussing the general propositions involved and then relate them to the several interventions, as hereinafter indicated.

[1] The court did not err in overruling appellants' plea of abatement, which they urged upon the proposition that under articles 6394f and 6394j, Texas Complete Statutes (Vernon's Sayles' Ann. Civ. St. 1914, arts. 6394f, 6394j), this suit could not be tried until twelve months after the completion of the work. We could dispose of this proposition upon the ground that appellants have made no statement showing when the work was completed. The record shows that service was complete upon defendants at the August term, 1921, and as the case was not tried until April 10, 1922, it may be the work had been completed more than twelve months when the case was tried. But, under the cited articles, the court did not err in refusing to abate the suit. These articles provide that claimants under the bond of a public contractor must institute their suit or intervene in the suit of the state or municipality within twelve months after the completion of the work. It is also provided that the suit cannot be tried until one week after the completion of three weeks' publication of notice of the pendency of such suit. It is conceded that the notice was published and that more than one week had elapsed after such publication before the case was tried. The requirement that the lis pendens notice be published constitutes a limitation upon the time within which interventions may be filed. While, in general terms, it is provided that such interventions may be filed within one year from the completion of the work, yet giving effect to all the provisions of the act, the statute requires that they be filed before the case is tried, and if the case is tried

after due publication of lis pendens notice has been made, all interventions not filed are barred, though the one-year period of limitation has not matured. We have not been cited to any decision of this state construing the articles cited supra, but they are in identical terms, as to their conditions and obligations, with section 6923, United States Compiled Statutes. We have given to our statute the same construction given by the federal courts to that article. Bank v. United States, 214 Fed. 200, 130 C. C. A. 548; Baker Contract Co. v. United States, 204 Fed. 390, 122 C. C. A. 560; United States v. Wells (D. C.) 203 Fed. 146; Illinois Surety Co. v. United States, 212 Fed. 136, 129 C. C. A. 584; United States v. Illinois Surety Co., 228 Fed. 304, 142 C. C. A. 596; Pederson v. United States, 253 Fed. 622, 165 C. C. A. 248.

[2] Judge Bishop's disqualification to try this case did not disqualify him to call the special term of court at which it was tried. The call for the special term was general, for the trial of all cases on the docket, and was not limited to this case, nor any other particular case or cases. The call for the special term was not an order or judgment in this case, but was an exercise of a constitutional and statutory authority inherent in him as the regular judge of Henderson county in relation to terms of court for that county. No other judge had authority to call a special term of court for Henderson county.

[3] While article 5623a (Vernon's Ann. Civ. St. Supp. 1918, art. 5623a) was referred to in the plans and specifications, which required that the bond be executed under its provisions, we think the reference to that article was merely incidental and obvious error. When the conditions of the contract and bond are examined in the light of the several statutes of this state, we think it clearly appears that article 6394f was meant, because that article alone has relation to public contracts. Article 5623a refers to private contracts. The conditions of the bond and contract, as executed, are the conditions of article 6394f, and not of article 5623a. Therefore, in construing the contract and bond, the reference to article 5623a should be disregarded and the contract construed in the light of and by the terms of article 6394f. Trinity Portland Cement Co. v. Lion Bonding Co. (Tex. Com. App.) 229 S. W. 483.

[4, 5] As we have said, our statutes (articles 6394f–6394j) are identical in their conditions and requirements with section 6923, United States Compiled Statutes, which deal with the same subject in its relation to the federal government. Having adopted the federal statute, the construction given it by the federal courts should be persuasive, if not conclusive, of the proper construction of our statute. In Brogan v. National Surety Co., 246 U. S. 257, 38 Sup. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776, the Supreme Court of the United States held that the conditions of a contractor's bond executed under section 6923 protected one who furnished supplies to a contractor when the work was done under conditions which imposed upon him the duty and necessity of furnishing board and lodging for his employees, but also clearly held that such supplies were not included in the bond unless that necessity existed. Speaking for the court, Mr. Justice Brandeis said:

"The Circuit Court of Appeals deemed immaterial the special circumstances under which the supplies were furnished and the findings of fact by the trial court that they were necessary to and wholly consumed in the prosecution of the work provided for in the contract and bond. In our opinion these facts are not only material, but decisive. They establish the conditions essential to liability on the bond. The bare fact that the supplies were furnished to the contractor and were consumed by workmen in its employ would have been immaterial. A boarding house might be conducted by the contractor (like some company stores concerning which states have legislated. Keokee Consol. Coke Co. v. Taylor, 234 U. S. 224, 58 L. Ed. 1288, 34 Sup. Ct. Rep. 856) as an independent enterprise undertaken solely in order to utilize the opportunity for separate and additional profit afforded by the congregation of many laborers in the particular locality where the public work is being performed. The laborers might resort to such a boarding house in the exercise of individual choice in the selection of an eating place. Under such circumstances the furnishing of supplies would clearly be a matter independent of the work provided for in the contract, and would not entitle him who had furnished the groceries used in the boarding house to recover on the bond. But here, according to the undisputed facts and the findings of the trial court, the furnishing of board by the contractor was an integral part of the work and necessarily involved in it. Like the supplying of coal to operate engines on the dredges, it was indispensable to the prosecution of the work, and it was used exclusively in the performance of the work. Groceries furnished to a contractor under such circumstances and consumed by the laborers, are materials supplied and used in the prosecution of the public work. The judgment of the Circuit Court of Appeals is therefore reversed and that of the District Court affirmed."

But it was held in Hastings Co. v. Lowrance, 252 Fed. 122, 164 C. C. A. 234, that feed for mules was covered by such a bond. The court said, referring to the case last cited:

"In that case the location of the work made it necessary for the contractor to provide board and lodging for the men on the ground. He did so under an arrangement by which he was to deduct a stated amount monthly from their wages. Protection under the statutory bond was given one who furnished him with groceries and provisions. It was held that the supplies had a proximate relation to performance of the contract work. Though the

circumstances of the case before us are not fully stated, we do not think it can be said from the face of the complaint that the furnishing of the feed for the teams was a casual transaction, but indirectly related to the performance of the levee contract. It is averred that the feed was 'used and consumed * * * in the prosecution and execution of the earthwork.'

"The judgment is reversed, and the cause is remanded for further proceedings in conformity with this opinion."

See, also, City of Portland v. New England Casualty Co., 96 Or. 48, 189 Pac. 211.

[6] In this case, it was not made to appear, either by pleadings or proof, that any necessity existed such as was reflected in the Brogan Case, supra, requiring the contractors and subcontractors to furnish board and lodging for their employees. Therefore, under the authority of that case, the court erred in overruling appellants' exceptions to the interventions based on grocery bills, and having overruled all exceptions, he again erred, when the facts developed, in submitting such issues to the jury. But we think the evidence fully sustains a necessity for the use of mules upon the work, and that the item of feed bills comes within the rule announced in Hastings Co. v. Lowrance, supra. The court correctly overruled all exceptions against such items, and permitted them to go to the jury. However, on the whole record, as presented to us, we are unable to say what part of the claims of LaRue & Barron Company, L. E. Cook, and J. F. Ash as an assignee of L. E. Cook, were for groceries and how much for feed bills. The judgments then in favor of these parties will have to be reversed and their claims remanded for a new trial, with instructions to the trial court to exclude all items listed on their interventions except those for feed. It appearing that the interventions of Athens National Bank, Jeff Lewis, and W. C. Maxwell are wholly for groceries, the judgment of the trial court in their favor is here reversed and judgment rendered against them. And it appearing that the interventions of B. F. Garlington and Robinson Bros. are entirely composed of feed items, it is ordered that the judgment of the trial court in their favor be affirmed; and it further appearing that J. F. Ash intervened setting up an account for feed sold by him on which there was a balance due of $2,070.60, as found by the jury, and on which judgment was entered in his favor, it is ordered that such judgment be affirmed.

[7, 8] Unless excepted to, an allegation that certain interveners were assignees of claims for material sold by other parties to the contractors was sufficient. If the defendants desired a more particular statement of the nature and character of the assignments, their date, and whether oral or in writing, they should have demanded it by proper ex-

ceptions. We overrule all of appellants' assignments of error on this point. But though the allegation was not excepted to, when it developed upon the trial that certain assignments were in writing, the court committed reversible error in receiving parol evidence of the contents of such assignments, in the absence of a proper excuse for not offering the originals. In Warren v. Sigmond Rothschild Co. (Tex. Civ. App.) 240 S. W. 1031, it was said:

"In order to recover upon an assignment of a chose in action, it is essential that plaintiff establish: First, that there was a cause of action; second, that it was such a cause of action as could be assigned; and, third, that it has been assigned."

And in Standifer v. Bond Hardware Co. (Tex. Civ. App.) 94 S. W. 144, it was said:

"After having disclosed that the transfer was in writing, however, oral proof of the assignment would be rejected, on the ground that it was not the best evidence."

We have reversed the interventions by our order supra to which this assignment relates, but upon a new trial this portion of the evidence should be given effect.

[9] The contractors and their surety were primarily liable to all who furnished material "required to complete the work" within the terms of the contract and bond. It follows then that the court did not err in giving holders of such claims judgment against appellants without requiring them first to exhaust their remedy against the subcontractors who purchased such material.

[10] The issue was raised that A. W. Perdue did the work and furnished the material which formed the basis of his intervention as a contractor and not as an employee of B. B. Johnson. While it appeared that Johnson was the owner of the teams and tools and was to receive from Perdue, as rent for such teams, all above a certain sum, yet Perdue was to have charge of the teams, do the work, pay all the expenses, collect for the service, and pay Johnson the balance, if any, above the agreed amount. Under this contract, he did the work, expended the money, and purchased the material which formed the basis of his intervention. No error was committed in submitting his claim to the jury, nor in its trial. Therefore the judgment in his favor is affirmed.

[11] The contract, construed in connection with the plans and specifications which were made a part thereof, provided that the original contractors could not sublet the work without the written consent of the state highway engineer. The fact that this consent was not secured, and that a large part of the work was done by subcontractors without that consent, did not release the United States Fidelity & Guaranty Company from its suretyship. This provision was for the

protection of Henderson county and was not a condition of the suretyship of the United States Fidelity & Guaranty Company. By accepting the work of the subcontractors without protest, this provision was waived by Henderson county. The testimony, therefore, of J. M. Royal, one of the "special commissioners of the road bond," and his two associates, to the effect that they did not require the subcontractors to secure the written consent of the state highway commissioner, was not prejudicial to any interest or right of the surety company.

[12] While as an abstract proposition the court erred in permitting interveners to offer in evidence the compromise judgment between the contractors and Henderson county, it was an immaterial error, and on the facts of this case, as a matter of law, did not prejudice the rights of appellants. The court correctly instructed the jury that appellants were liable for all material required to complete the construction of the road. The only issue for the jury was the amount or balance due on each intervention for such material. On that issue, the admission of the compromise judgment could not have prejudiced appellants.

[13] What we have just said disposes of appellants' criticism of the following paragraph of the court's charge:

"You are charged that under the contract introduced in evidence signed by the county and Williams, Burk & Co. and the bond made by the United States Fidelity & Guaranty Company, is such a contract and bond as a cause of action can be maintained upon, and that if Williams, Burk & Co. failed to complete the road in accordance with such contract or failed to pay off the labor or material in the completion of such road, that both Williams, Burk & Co. and the surety company are liable to any party furnishing labor or material for building or constructing such road."

This charge was not upon the weight of the evidence, nor open to the construction that the jury were authorized to find in favor of an intervener even though his claim may have been paid in full. In this connection, we overrule all of appellants' exceptions to the issues as submitted to the jury. They were not upon the weight of the evidence.

Appellants specially plead that a novation was made in the contract after the execution of the bond, whereby a large amount of work within the corporate limits of the city of Athens was added to the original contract. This issue was properly submitted to the jury and found by it against appellants' contention. The finding is fully supported by the evidence.

Of course, appellants advance a sound proposition—and the court so charged the jury— when they say that the burden rested upon each intervener to show that the items sued for by him were actually used in the construction of the road. They attack the judg-

ment in favor of many of the interveners on the ground that the evidence does not show that their supplies were used in the construction of the road. This assignment is directed against those interveners whose judgment we have reversed and remanded and those we have reversed and rendered, as well as the Hawn Lumber Company and the personal claim of J. F. Ash, whose judgment we affirmed. It is not necessary to discuss the evidence as to these interventions which we have reversed and remanded and reversed and rendered. We think the testimony is sufficient, without quoting it, to raise that issue in favor of J. F. Ash. Appellants make the statement that no evidence was offered connecting the claim of Hawn Lumber Company with the construction of the road. This statement is not controverted by the appellees, though they have filed a long brief herein. Therefore the judgment in its favor must be reversed and remanded, because without support.

We sustain the cross-assignments of J. F. Ash, Hawn Lumber Company, LaRue & Barron Company, Williford Lumber Company, and Dean Jackson, whereby they complain of the action of the court in refusing to submit certain of their claims to the jury. While the evidence was not conclusive on the issue that the items furnished by them were used in the construction of the road, we believe the issue was raised.

What we have said disposes of all of appellants' assignments of error, and propositions thereunder, and appellees' cross-assignments, in so far as we understand them in their relation to the several interventions. The judgment of the trial court is affirmed as to all interventions not discussed by name.

Affirmed in part, in part reversed and rendered, and in part reversed and remanded.

## On Motion For Rehearing.

[14] We believe we erred in sustaining the cross-assignments of J. F. Ash, Hawn Lumber Company, LaRue & Barron, Williford Lumber Company, and Dean Jackson. While appellants answered these cross-assignments by a supplemental brief, in the vast volume of this record we overlooked this brief on the original consideration of this case. Appellants object to our considering these cross-assignments, on the ground that these appellees had not perfected an appeal from the judgment of the trial court denying them the relief which they now pray for. They were awarded judgments against appellants Williams, Burk & Co. for certain items set forth in their interventions, but were denied recovery on other items. Williams, Burk & Co. filed an appeal against the judgments in favor of these appellees, thereby bringing before this court for review all errors assigned and cross-assigned. Under our appellate procedure a successful party may cross-

assign errors against the appellant without perfecting an independent appeal. The rule is thus stated by 2 Michie's Ency. Dig. of Texas Reports, p. 267:

"The taking of the appellate proceeding by one party relieves his adversary of the necessity of taking like action and brings the judgment before the appellate court for revision upon the complaints of both, and either has the right to point out errors in it prejudicial to him."

And again, on page 268:

"Appellee may file and insist upon cross-assignments of error without giving appeal bond."

See, also, other authorities cited in connection with the rule.

No judgment was entered against appellant United States Fidelity & Guaranty Company for any sum in favor of Dean Jackson and Williford Lumber Company. While it has appealed from that part of the judgment against it in favor of the other interveners, they did not attempt to appeal from the judgment in their favor against Jackson and Williford Lumber Company. As we understand our rules of appellate procedure, Jackson and Williford Lumber Company cannot cross-assign error against the United States Fidelity & Guaranty Company. Their only relief against the judgment denying them a recovery was by an independent appeal, which they did not attempt to perfect.

18 Michie's Ency. Dig. etc., p. 602, makes the following statement of the rule:

"Where a defendant appeals from a judgment for plaintiff, plaintiff must file a cross-appeal from a judgment for a codefendant before he can assign cross-errors complaining of the judgment for the codefendant."

[15] Again, appellants object to our considering the cross-assignment of the Williford Lumber Company on the ground that its plea of intervention is not in the transcript. We think this omission on its part to have its plea included in the transcript bars us from reviewing its assignments.

[16] But on their merits these assignments cannot be sustained. A part of the J. F. Ash intervention, based on the L. E. Cook account, was for money in the sum of $250 advanced to pay for the labor on highway No. 19. No showing is made that the laborers were a party to this transaction, nor that they made an assignment of their labor claims to intervener. LaRue & Barron were denied a recovery for a $75 item of the Cook account held and pleaded by them, which was for money advanced to pay labor claims. These items were correctly excluded by the trial court. Under the facts as stated, the labor claims were extinguished when paid and cannot now be urged under the theory of an equitable assignment. Hess & Skinner v. Turney, 110 Tex. 148, 216 S. W. 621; Lion

Bonding & Surety Co. v. First State Bank of Paris (Tex. Civ. App.) 194 S. W. 1012.

[17] The third cross-assignment is as follows:

"The court erred in refusing to grant J. F. Ash judgment against J. A. McNeill in the sum of $245 for the reason that the jury found that J. A. McNeill owed J. F. Ash for this much feed purchased after McNeill ceased to work upon highway No. 19, and both J. F. Ash and J. A. McNeill were parties to the suit."

Certainly it could not be said that there was any relation between Ash's demand against McNeill and his demand against the appellants. Ash did not perfect any appeal against the ruling of the court denying him judgment against McNeill. The appeal by these appellants did not have the effect of removing to our jurisdiction the judgment denying Ash a recovery in so far as he asserted a demand against McNeill. Stewart v. Toler & Daniel (Tex. Civ. App.) 250 S. W. 274, and authorities cited supra.

[18] The fourth cross-assignment is as follows:

"The court erred in not granting Hawn Lumber Company a judgment against the defendant United States Fidelity & Guaranty Company in the sum of $265.35, instead of only $35.03, for the reason that the entire Hawn account was for lumber sold to the contractors for use in building highway No. 19."

The eighth cross-assignment is as follows:

"The court erred in refusing to grant judgment against the defendant United States Fidelity & Guaranty Company and in favor of Williford Lumber Company in the sum of $45.10 for the reason that the account was for material necessary in the prosecution of the work on highway No. 19."

All the statement made by appellees in support of these cross-assignments is as follows:

"The contract itself stated that it was to cover all work, labor, implements, machinery, equipment and material required to complete the work. The bond was conditioned that the contractors should in all things 'well and truly perform all the terms and conditions of the contract.'

"From the pleadings and the evidence the court found that the contractors owed Hawn Lumber Company $265.35, but that only $35.03 was for lumber used in the building of the highway. The court further found that the remainder of the account was for lumber used to build forms for concrete, and that the surety company was not liable for lumber used to build forms. A motion for judgment against the surety company for the full amount was overruled.

"The court also found that Williams, Burk & Co. owed Williford Lumber Company $45.10 for material and granted judgment for this amount. And for the reason that it was for lumber for concrete forms overruled a motion asking for judgment against the defendant United States Fidelity & Guaranty Company."

Appellants make the following additional statement of the nature of these claims:

"The only witness who attempted to testify with reference to this account (the account of the Hawn Lumber Company) was Dan Webster, and in his testimony he stated that the lumber in question was used for making dump boards, wagon beds, toolhouse and other permanent equipment of the party purchasing the same. * * * No, I don't know what happened to any of this stuff after it left the yard. All I know is when I delivered it to the teams."

In reference to the claim of the Williford Lumber Company:

"The only witness who attempted to testify with regard to same was R. L. Williford, and his testimony shows that all of these items consisted of lumber used to make gravel pits and a trapdoor to be used in loading gravel, all of which was permanent equipment of the party purchasing the same."

It would appear from the statements made by the parties to this appeal that the lumber furnished by the Hawn Lumber Company and the Williford Lumber Company became a part of the permanent equipment of the contractors, or was used only incidentally in building the road. There is no showing that it was entirely destroyed nor that it became a part of the permanent structure. For all we know, the contractors may have carried it away, or sold it or applied it to other uses. These appellees rested under the burden of showing that the lumber was material used in the construction of the road; that is, that it was entirely consumed in such work. The showing made does not meet that burden, and therefore the trial court correctly denied them a recovery. This conclusion is fully sustained by the following authorities: Southern Surety Co. v. National Lbr. Co., 73 Ind. App. 592, 122 N. E. 686; City Retail Lbr. Co. v. Title Guaranty & Surety Co., 72 Wash. 300, 130 Pac. 345; Hess & Skinner v. Turney (Tex. Civ. App.) 207 S. W. 171; Beals v. Fidelity & Deposit Co., 76 App. Div. 526, 78 N. Y. Supp. 584, affirmed 178 N. Y. 581, 70 N. E. 1095; K. C., to Use of K. C. Hydraulic Press Brick Co., v. Youmans, 213 Mo. 151, 112 S. W. 225; U. S., Use of Thos. Laughlin Co., v. Morgan (C. C.) 111 Fed. 474; American Surety Co. v. Lawrenceville Cement Co. (C. C.) 110 Fed. 717; Lanham v. Jacoby, 5 Pennewill, 576, 61 Atl. 871; United States Rubber Co. v. American Bonding Co., 86 Wash. 180, 149 Pac. 706, L. R. A. 1915F, 951; Nye-Schneider-Fowler Co. v. Bridges, 98 Neb. 27, 151 N. W. 942; National Surety Co. v. U. S., Use of Pitts. & Buff. Co., 228 Fed. 577, 143 C. C. A. 99, L. R. A. 1917A, 336; U. S. F. & G. Co. v. California-Arizona Const. Co., 21 Ariz. 172, 186 Pac. 502; Sherman v. American Surety Co., 178 Cal. 286, 173 Pac. 161.

[19] The ninth and tenth cross-assignments are as follows:

(9) "The court erred in refusing to grant Dean Jackson a judgment against the defendants Williams, Burk & Co. in the sum of $422.25, instead of only $25.75, and in refusing to grant judgment against defendant United States Fidelity & Guaranty Company in the sum of $422.25 as surety of Williams, Burk & Co., for the reason that the court found from the evidence that the work done by Dean Jackson was necessary in the prosecution of the work on highway No. 19, and the principal, Williams, Burk & Co., had by their contract agreed to pay for all labor required to complete the work, and the defendant United States Fidelity & Guaranty Company guaranteed the faithful performance of the contract and both Williams, Burk & Co. and their surety, United States Fidelity & Guaranty Company, are liable under the contract for the full amount of $422.25 for work done by Dean Jackson necessary in the prosecution of the work on Highway No. 19."

(10) "The court erred in refusing to grant Dean Jackson a judgment against the defendant Williams, Burk & Co. in the sum of $422.25 instead of only $25.75, and in refusing to grant judgment against defendant United States Fidelity & Guaranty Company in the sum of $422.25 as the surety of Williams, Burk & Co. for the reason that the court found from the evidence that the work was done by Dean Jackson, was necessary in the prosecution of the work on Highway No. 19, and the principal Williams, Burk & Co. and their surety, United States Fidelity & Guaranty Company, are both liable for said work for the reason that the statute makes them liable and no party to the contract and no surety company can waive the provisions of the statute."

The only statement made by Jackson in support of these cross-assignments, which are advanced in support of his intervention, is as follows:

"The court heard the pleadings and the evidence and found that Dean Jackson (a blacksmith) had done work upon tools and equipment necessary in the construction of highway No. 19, and amounting to the sum of $422.25. The court further found that only $25.75 of this amount had been done for Williams, Burk & Co. direct, and entered judgment against them for this amount, and refused judgment against them for the remainder, and also refused to enter judgment against the surety company for the $422.25 for the reason that the bond did not cover work on tools and equipment."

Appellants make the following supplemental statement:

"The intervener, Dean Jackson, filed a claim in this suit, setting up various items in the nature of repair bills. His uncontradicted testimony was as follows: 'This work was in the nature of repair work to their plows and tools and equipment that they were using out there on the road.'"

The following authorities condemn this claim: Standard Boiler Works v. National Surety Co., 71 Wash. 25, 127 Pac. 573, 43

L. R. A. (N. S.) 162; Alpena ex rel. Besser v. Title Gty. & Surety Co., 159 Mich. 329, 123 N. W. 1126; Alpena ex rel. O'Brien v. Title Gty. & Surety Co., 159 Mich. 334, 123 N. W. 1127; Empire State Surety Co. v. Des Moines, 152 Iowa, 552, 131 N. W. 870, 132 N. W. 837; U. S., Use of Briscoe, v. City Trust S. D. & S. Co., 23 App. D. C. 155; National Surety Co. v. U. S., Use of Pitts. & Buff. Co., 228 Fed. 577, 143 C. C. A. 99, L. R. A. 1917A, 336.

The proposition is thus discussed by the Supreme Court of Washington in Standard Boiler Works v. National Surety Co., 71 Wash. 28, 127 Pac. 573, 43 L. R. A. (N. S.) 162:

"In none of our own cases, so far as we have been able to discover, have we discussed the item of repairs, but we find the general rule to be that no recovery can be had for machinery used in the prosecution of the work. 'The contract presupposes that the contractor has and will furnish upon his own account the necessary tools, implements, and appliances with which to perform the work.' Kansas City, Use of Kansas City Hydraulic Press Brick Co., v. Youmans, 213 Mo. 151, 112 S. W. 225. The logical consequence of this holding is that repairs put upon such machinery do not come within the protection of the law. Empire State Surety Co. v. Des Moines, 152 Iowa, 531, 131 N. W. 870, 132 N. W. 837; Alpena ex rel. Besser v. Title Guaranty & S. Co., 159 Mich. 329, 123 N. W. 1126; Alpena ex rel. O'Brien v. Title Guaranty & S. Co., 159 Mich. 334, 123 N. W. 1127; Alpena ex rel. Beaudrie v. Murray Co., 159 Mich. 336, 123 N. W. 1128; United States, Use of Sica, v. Kimpland (C. C.) 93 Fed. 403; United States, Use of Chapman, v. City Trust, S. D. & Surety Co., 23 App. D. C. 153; Philadelphia, Use of Taylor, v. Malone, 214 Pa. 90, 63 Atl. 539; Beals v. Fidelity & D. Co., 76 App. Div. 526, 78 N. Y. Supp. 584. In United States, Use of Chapman, v. City Trust, S. D. & Surety Co., 23 App. D. C. 153, which involved the right to recover for repairs to a dredge used upon a public work, it was held: We regard the question as too plain to require any elaboration of argument. As well might the person who constructed the dredging machine in the first instance seek to hold the surety liable, as the person who afterwards makes repairs in order to constitute the machine what it ought to be. "Our conclusion is that a contractor is presumed to be prepared with machinery and appliances necessary to do his work; that such items are furnished upon his credit, and not upon the implied credit of the public; and that repairs, if made, will be paid out of the profits of the undertaking. 'Certainly the city could not under any circumstances be subjected to the payment out of the contract price or otherwise for the working equipment procured by the contractor and used by him in carrying on the work. It cannot be assumed that the contract price for the work covered, as a part of the cost, the purchase of the working equipment, which might have been previously used or might be subsequently employed by the contractor in carrying on other work of like

character.' Empire State Surety Co. v. Des Moines, 152 Iowa, 549, 131 N. W. 877."

[20] Appellants complain of our disposition of their propositions of error on the admission of evidence on the issue of assignments of the claims asserted by certain interveners. As we understand the record, we sustained appellants' propositions in so far as the court heard parol evidence when it appeared that the assignments were in writing. We think the evidence clearly sustains the finding that the other interventions were held under equitable assignments. While the court may have erred in not requiring the interveners to plead more particularly the nature of their assignments, when the proof was offered on this issue, no suggestion of surprise was made. Thus it does not appear that appellants suffered any injury because of the ruling of the trial court on their special exceptions. In the original opinion we said that it was the duty of appellants to ask for a more particular plea by way of special exception. We are now conceding appellants' contention that such exceptions were made by them, but are overruling their propositions under Rule 62a (149 S. W. x).

Our judgment in disposing of this case is modified only to the extent of overruling all cross-assignments of error and affirming the judgment of the trial court in denying recovery to J. F. Ash, Hawn Lumber Company, LaRue & Barron Company, Williford Lumber Company, and Dean Jackson on the matters asserted by their cross-assignments.