[Civ. No. 8621. First Appellate District, Division One.—April 18, 1933.]

J. G. GARBUTT, Plaintiff and Appellant, v. W. T. CHAPPE et al., Defendants and Appellants.

J. B. KING, Appellant, v. W. T. CHAPPE et al., Respondents.

J. W. Havens and John D. Willard for Appellant J. G. Garbutt.

Kirkbride, Wilson & Brooks for Appellant J. B. King.

Byron Coleman for Appellants and Respondents W. T. Chappe et al.

PARKER, J., *pro tem.*—The actions above entitled, arising out of the same transaction, and involving the same issues, practically between the same parties, were consolidated for trial in the court below and the record on appeal is a single transcript and bill of exceptions jointly prepared and settled. The controversy centers about a sum of money withheld by the City of Oakland upon a stop-payment notice, which money would otherwise be payable pursuant to the terms of a public improvement contract.

Inasmuch as the caption indicates different appellants and respondents, it may serve to clarify the discussion if we detail the situation at least to the extent, preliminarily, of identifying the real parties in interest here. We may note, at the outset, that there is no issue presented as to the validity of the proceedings up to and including the letting of the contract; nor is there any point made as to full performance in so far as the City of Oakland is interested. The position of the City of Oakland is analogous to that of a stakeholder. It concedes that the money is due someone and has little, if any, interest in the outcome. Chappe and Curren were partners doing business under the name of Oakland Contracting Company. After proceedings regularly had, a contract was entered into between the City of Oakland

and the Oakland Contracting Company. This contract called for the paving of certain streets in Oakland. Wm. H. Ford and Associated Gravel Company were and are the sureties on the contractors' bond. J. B. King, while in truth an assignee of Loui F. King, will be hereinafter referred to as though there were no assignment, and the name "King" will include both assignor and assignee inasmuch as no point is made on the question of assignment and it being conceded that all rights of the assignor have passed and all liabilities of said assignor attach to the assignee. J. G. Garbutt, plaintiff in one of the consolidated actions, alleges that he did business under different designations, of which hereinafter. However, less confusion will result if we designate him by his own proper name throughout, referring to his business form when discussing that phase of the case wherein it may be an issue. As hereinbefore noted, the contract of paving was completed and accepted and the unpaid portions of the contract price due. Garbutt and King each filed lien claims with notices to withhold, and these actions followed.

Garbutt alleged that he had furnished certain labor and materials to the contractors for which he had not been paid. King, in his action, made the same allegation, claiming that he had furnished labor and material to Garbutt, who, alleged King, was a subcontractor under the original contract. In each case the defendants appeared and made specific denials. We omit reference to any counterclaims inasmuch as the issues raised thereby are not here urged.

The actions were tried together and a judgment rendered in favor of Garbutt against defendants in the sum of $3,717.24 principal and $723.48 interest, plus $500 attorneys' fees. The court awarded King a judgment against Garbutt in the sum of $5,053.48 principal, with interest. Further, judgment was awarded defendants Ford and Associated Gravel Company against King for $500 as attorneys' fees, and the remaining defendants received judgment against King for costs. Garbutt and King appeal from the judgment. Ford and Associated Gravel Company appeal from that portion of the judgment in favor of Garbutt. The contractors have abandoned their appeal, though the sureties, upon whom the burden falls, carry on.

We will first consider the case of Garbutt, which will unfold the situation to the extent that it will be unnecessary to repeat the details when considering the appeal of King. In the case of Garbutt there are two appeals. Garbutt appeals on the ground that he should have had judgment for a greater amount; and the defendants, sureties on the contractors' bond, argue that Garbutt should recover nothing. The facts, to a large extent, are in little conflict. It seems that there is a patented process of laying pavement, the use of which process has become highly desirable in modern construction. Ordinarily, under the patent rights extant, use of the process could be curtailed or harsh and unusual terms imposed. On the other hand, if the process were never used the patents would have little value. Accordingly, the patentee, though a state licensee of the patent, in August of 1927 granted to the City of Oakland the right and privilege of specifying the patented process in calls for bids on pavement work and agreed to furnish the material and supplies used in the performance of the contract, in so far as use of the patent process was employed, at a stipulated figure. The agreement of the licensee ran in favor of all contractors or bidders who might elect to use the process aforesaid. The offer was made by California Vibrated Concrete Company, the then owner of the exclusive license privilege in and for Alameda County.

The Oakland Contracting Company was awarded a paving contract out of which the present litigation arises. The patented process was specified in this contract and the contracting company thereupon entered into a written agreement with California Vibrated Concrete Company whereby the latter agreed to furnish to the contracting company certain material, equipment, labor and service under the following terms and conditions, viz.: 1. The necessary machinery and special tools incident to the patented process, together with required surface stone. 2. Operators, stone spreaders and other labor to complete spreading and vibration of stone to the point of curage. 3. A supervising inspector. As full compensation the concrete company was to receive eight cents per square foot of the pavement constructed. Within a few days of the execution of this contract, another agreement was entered into between the same parties. This latter agreement recited the former,

and then provided that the contracting company should furnish material and all labor required in the use of the patented process. The trial court found this latter agreement to be a modification of the former. Appellant Garbutt contends that such a finding is unsupported, and he characterizes the latter contract as one of purchase and sale and entirely independent of the original agreement. As a basis of computation it would make little difference how we classified the latter agreement. However, the status of each party to the transaction may be altered or changed according to the character of the instrument. The two contracts were between the same parties and both were executed within a few days of each other. The contracting company, under its original contract with the city, had agreed and was bound to pave certain streets to the point of completion. The specifications requiring a patented process, it was necessary to secure the right and license to use the process patented. Accordingly, the first contract with the licensee required the latter to furnish certain equipment, labor, material and supervision. The latter contract dealt with the same subject. The contracting company, in furtherance with its own contract, by the provisions of the latter contract with the licensee, was to furnish the materials and labor, leaving the licensee bound only to provide the special equipment and the inspector. It seems obvious that the two engagements, relating to the same subject matter and between the same parties and executed at or about the same time, should be construed together in fixing the status, the rights and the obligations of the parties. Appellant Garbutt argues that, by considering these agreements as distinct and construing the latter as a contract of purchase and sale, his status is that of one who has completed the earlier contract by the furnishing of labor and materials in addition to the right to use the patented process, while, construing the two contracts as a whole, one modifying the other, we change his status from a conceded materialman to one of doubtful standing. Be that as it may, we adopt the finding of the trial court and conclude that the latter agreement was a modification of the former.

Under the contract as modified, there was earned the sum of $9,729.21. Garbutt admits having received $6,011.97, leaving a balance of $3,717.24, for which amount the court

awarded him judgment. Upon this appeal Garbutt contends that the court should have awarded him an additional sum alleged as becoming due under an oral contract. The claim of lien filed by Garbutt set forth the amount originally due him as $14,808.31 upon which had been paid the sum of $6,011.97, leaving a balance of $8,796.34. The additional sum claimed approximates $5,000, and the record before us is somewhat hazy as to the basis of Garbutt's claim. Garbutt was not a witness at the trial. It is his contention here that in addition to the written contracts providing for payment to him of a net of 3.83 cents per square foot, there was an additional oral contract under which he received $5,065. This sum he alleges was received, not as a payment upon the written contracts, but, as stated, he received it as payment under the terms of the oral agreement which added that amount to the contract price. The evidence supporting the claim is the testimony of one W. T. Chappe, who, with W. J. Curren, comprised the firm doing business as Oakland Contracting Company, the contractors. Chappe's testimony does not confirm the claim. While he is somewhat vague on the details, he testifies, however, that there were many discussions on the matter. His testimony is as follows: "In the first conversation, the $5,065 was to be in addition to the other sums of money paid under the written contract. There was a discussion as to that. Well, when we got the contract we got it for $9,000 [referring to the contract between Garbutt and the Oakland Contracting Company]; that was the written contract that was given to us. . . . The $5,000 was to apply on account of the contract, that was the way we understood it." Again, the witness testifies: "I know that the money was paid. . . . It was given on part of the license agreement for Excelsior Boulevard [the work here involved]. There was talk of a $14,000 royalty. We had the understanding that the contract would be written up with a $14,000 royalty. When we came to study the contract it was made for approximately $9,000. . . . The $14,000 figure was discussed verbally, but should have gone into the contract if it was going to go through." It is true that certain other excerpts from the testimony of the witness might lend support to appellant Garbutt's argument, but the foregoing remained uncontradicted.

The court had before it the offer to the City of Oakland to furnish contractors the patent process for eight cents per square foot and had likewise before it the agreement of Garbutt, licensee of the process for Alameda County, with the contractors for that same amount. Any other secret oral agreement merited close scrutiny, and where the evidence was indefinite and uncertain the court was warranted in finding against such side agreement. ■ Appellant Garbutt offered in evidence a letter written by W. J. Curren, partner in the Oakland Contracting Company. This letter acknowledges the claim of Garbutt for the full amount claimed. The trial court refused to admit the letter in evidence upon the ground that the same was written at a date subsequent to the dissolution of the partnership. There is sufficient evidence to establish this fact, notwithstanding the record does not disclose the exact date upon which the partnership was actually dissolved. The objection to the offer of the letter in evidence went further and specified as a ground of objection the lack of foundation as well as the general grounds of irrelevancy, incompetency and immateriality. It was not shown that the partnership was in liquidation on the date of the letter; the only evidence on the subject was that the partnership had been dissolved. Section 1870 of the Code of Civil Procedure, subdivision 5, permits proof of the act or declaration of a partner during the *existence of the partnership*. The letter on its face admitted that the claim of lien filed by Garbutt was correct in amount. ■ The correctness of the amount depended upon the existence or nonexistence of an independent oral agreement, and the offer of the letter was for the purpose of establishing this said oral understanding. Under the written contracts in evidence, the amount claimed in the lien was not due. The only way that the lien claim could be held true and correct was by applying payments on a separate agreement. An exhaustive note on the subject is available in 73 American Law Reports, beginning at page 459, wherein California is included among the jurisdictions excluding from evidence admissions made after dissolution. In volume 7, Uniform Laws Annotated, at page 20, the same rule is announced, and also in Rowley on Modern Law of Partnership, section 888. On the appeal of Garbutt the judgment is affirmed.

The appeal of the sureties, Ford and Associated Gravel Company, will now be considered. This is an appeal from the judgment in favor of Garbutt. ▉ The first ground urged is that Garbutt has no capacity to sue. Garbutt alleges, and the court found, that he was at all times mentioned an individual doing business under the name and style of California Vibrated Concrete Company, and also the name of Vibrolithic Company of Oakland. These appellants, while they claim lack of capacity to sue, really seem to mean that Garbutt did not prove that at any of the times it was he who was doing business under either of the fictitious names. It is conceded that at the time of trial and before the filing of his complaint, Garbutt had complied with the statutes requiring the filing and publication of certificates by persons doing business under fictitious designation. Granting this, these appellants urge that there is no evidence showing that he was so transacting business at the times here in question. The point is that there were other persons doing business under the designated titles at the time the contracts were entered into. We find sufficient in the record to support the finding. True, the evidence viewed from appellants' point, strengthened by inferences that may be permissible, might support a different conclusion. By the same token, similarly drawn inferences support the finding made.

▉ The next contention is that the claim of Garbutt is not lienable under the provisions of section 19 of the Improvement Act of 1911. This section provides that the bond shall inure to the benefit of any and all persons who perform labor on, or furnish materials to be used in, said work or improvement. It is then argued that Garbutt furnished neither labor nor materials; that the extent of his contribution to the work was the permission to use the patented process. There was something more than this. Garbutt furnished for use the appliances necessary to perform the work according to the patented process and furnished an inspector to advise the proper method of performance. Section 79e of the Improvement Act (added Stats. 1927, p. 636) contemplates the use of patented processes such as a city council may adopt. The point is disposed of in *United States Fidelity & Guaranty Co.* v. *California-Arizona Construction Co.*, 21 Ariz. 172 [186 Pac. 502]. Without

elaborate quotation from this authority we may note the following: "The right to use the patented . . . process is as essential to the carrying out of the contract as the physical ingredients used in the performance of the work. Within the terms of the statute and the bond liberally construed a charge of this kind is therefore as much 'material' as the tangible, physical articles entering into the composition of the completed work and comes within the character of indebtedness secured by the terms of the bond." Appellant seeks to hold a construction of section 19 of the Improvement Act to the same strictness as a construction of a mechanic's lien. The weight of modern authority opposes such a course. (*A. L. Young Machinery Co.* v. *Cupps,* 213 Cal. 210 [2 Pac. (2d) 321], and cases therein cited.) Where a patented process is specified, the only way of performing the contract is to secure the right to the use of the patent. Without this the contract must fail. This seems almost self-demonstrative. The license is the most essential "material" going into the work. Under a liberal construction of the act, mindful of its aims, the word "material" would be sufficiently broad to include supplies of all sorts or kinds, and anything which is supplied comes within that word.

Next, appellants argue that because Garbutt was the licensee for Alameda County alone, the real owner of the patent was the one who had the claim. We find no merit in this claim, and no offer or attempt to show that at any time the original patentee entered into the negotiations or made any claim adverse to Garbutt or prejudicial to appellants. The judgment in favor of Garbutt is affirmed on the appeal of the sureties Ford and the gravel company.

We next take up the appeal of King. The judgment, as we have noted, allows Garbutt's claim for the entire work and awards King only a judgment against Garbutt. King now contends that Garbutt was a subcontractor whose obligations were protected by the bond, and not a materialman as found by the court. As before noted, we hold Garbutt to have been a materialman and this conclusion, more favorable to Garbutt than a strict construction would permit, suffices to answer the appellant King. With Garbutt a materialman furnishing materials to the contractor, the appellant King merely sold or sublet to Garbutt the license on the patented process for the county of Alameda. King was never a party

to any of the contracts now before us. His relationship with Garbutt was entirely independent of any of the contractors in the instant case. The relationship of debtor and creditor existed between King and Garbutt solely by reason of their own contract regarding assignment of the license in the area noted. The statute would be impracticable of enforcement if one who supplies materials to a materialman could recover on the bond, as such a holding would continue indefinitely the chain of potential claimants. Under the judgment here, the condition of the bond is fulfilled. The bond satisfies the claim of Garbutt who furnished the material and in so doing pays for all material entering into the construction. Whether this paid materialman pays his vendor, or whether that vendor pays the jobber, or the jobber the manufacturer, are questions beyond the care of the sureties. (*Berger Mfg. Co.* v. *Lloyd*, 209 Mo. 681 [108 S. W. 52]; *State* v. *Warren Construction Co.*, 129 Or. 58 [276 Pac. 260].)

The entire case was presented to the trial court in a difficult and halting manner; the identity of the parties seemed indistinct and the shifting of premises somewhat fatiguing. Under the various contracts in evidence, all that King and Garbutt did was to furnish certain materials and equipment, together with an inspector. The modified contract left the furnishing of material, the hauling and the labor with the contracting company. Garbutt was the owner of the process, in as far as the right to use the same in Alameda County was involved. The process was used and Garbutt received the agreed price therefor.

In all respects and as to all parties the judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 15, 1933.